[S. F. No. 2106.    Department Two.—September 17, 1902.]

## JAMES DOWDELL et al., Respondents, v. CHARLES CARPY, Appellant.

FORECLOSURE DECREE—REVERSAL—SALE OF PROPERTY—RESTITUTION—MEASURE OF DAMAGES.—Upon the reversal of a foreclosure decree, where execution was not stayed and the mortgaged property was sold to a third party, the measure of damages in an action for restitution brought by the mortgagors is limited in such case to the proceeds of the sale of the property, after deducting the expenses of sale.

ID.—ATTORNEYS' FEES.—No recovery can be had, in the action for restitution, of attorneys' fees for defending the foreclosure suit and obtaining a reversal of the decree.

ID.—COUNTERCLAIM—DEFICIENCY JUDGMENT.—Where the decree was reversed only as to certain property included in the mortgage, and was finally affirmed as to all other property included therein, the mortgagee, in the action for restitution by the mortgagors, may counterclaim the amount of the deficiency judgment against them.

Such judgment was the proper basis for an action, and, as it arose out of the same transaction, and was connected with the subject of the action, it was a proper subject of counterclaim.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Edward A. Belcher, Judge.

The facts are stated in the opinion.

Bigelow & Titus, and W. C. Van Fleet, for Appellant.

Rodgers, Paterson & Slack, for Respondents.

GRAY, C.—In this case it is conceded by respondent that "appellant's statement of the facts, so far as it goes, is substantially correct." In stating the case we will therefore content ourselves with following the language of appellant's opening brief as nearly as convenient.

On October 15, 1894, the plaintiffs gave to the Bank of St. Helena their promissory note for twenty-five thousand dollars, secured by a mortgage upon about four hundred and fifty thousand gallons of wine, together with certain machinery, cooperage, and other articles. On January 15, 1895, plaintiffs gave to the bank another note for twenty-five hundred dollars, secured by a mortgage on the same property. On April 3, 1895, plaintiffs entered into an agreement with F. Chevalier & Co. to sell to the latter certain of said wine, the payment of the purchase price to be made to the bank for the Dowdells' account. The bank consented to this contract and to the delivery of the wine thereunder to Chevalier. On April 11, 1895, the defendant Carpy purchased from the bank the notes and mortgages, and thereafter, on April 15, 1895, commenced an action against the Dowdells in the superior court of Napa County to foreclose said mortgages. In that action a judgment was rendered in favor of Carpy, foreclosing the mortgages and directing the sale of the entire mortgaged property. The defendants in that action (plaintiffs in this) moved for a new trial, and took an appeal to this court from an order denying a new trial; and upon that appeal this court reversed that order and remanded the cause for a new trial. It appears from the opinion of this court in that case (*Carpy* v. *Dowdell*, 115 Cal. 677) that the judgment

was reversed on the ground that the bank, by its consent to the sale to Chevalier, was estopped from foreclosing its mortgage as to the wine so sold, and that Carpy, having taken the notes when overdue, was estopped in like manner with the bank.

No stay bond was given upon that appeal, and on June 5, 1895, before the taking of the appeal, an execution and order of sale was issued upon that judgment, which was placed in the hands of the sheriff of Napa County, under authority of which the sheriff sold, at public auction, 262,067 gallons of the wine for $29,568.32. The wine thus sold was purchased by third parties, Carpy not buying any of it. The sheriff paid to Carpy $28,728.73, being sufficient to satisfy the judgment, and disbursed the balance of the proceeds as follows:—

> Receiver's fees ..............$587.35
> Sheriff's costs of sale ........ 152.24
> Attorney's fee .............. 100.00

After the reversal by this court in that case, the Dowdells commenced the present action. In their complaint they alleged the facts substantially as above set forth, and further alleged that Carpy, at the time of his purchase of the notes and mortgages from the bank, was fully informed by the bank and had full knowledge and notice of all the terms of the agreement between the Dowdells, Chevalier, and the bank. The latter allegation was denied by the answer. By the prayer of their complaint the plaintiffs sought to recover damages for the sale of the wine under the execution at the highest market value subsequent to the sale and prior to the commencement of this action, also attorneys' fees and other expenses alleged to have been incurred in defense of the former action and upon the appeal therein, making a total sum of $55,919.54.

The court below found the facts in favor of the plaintiffs, and held that the defendant was liable, not merely for the money received by him upon the execution sale, but also for damages measured by the market value of the wine within one year after the sale, which the court found to be $47,172.06, also for $1,000 attorneys' fees expended in obtaining the reversal in the former action, and the costs of the action so paid out of the proceeds of the sale of the wine, amounting to $839.79, making in all $49,011.85, for which amount judgment was rendered against the defendant.

The court further found that, upon the coming down of the *remittitur* from this court in the former action, that cause was retried and a judgment rendered in favor of Carpy upon the notes for $34,122.50, and $781 costs and attorneys' fees, and directing the sale of all of the mortgaged property, excepting the wine so sold to Chevalier. From that judgment the Dowdells took an appeal to this court, but did not file any stay bond. The Dowdells also appealed in that action from an order denying them a new trial. Both of these appeals have since been heard and determined in this court by an affirmance of the judgment and order appealed from. (*Carpy* v. *Dowdell,* 131 Cal. 495, 499.) The court also found:—

"That the acts of the defendant Carpy in taking said notes and mortgages from said bank and the commencement and prosecution of the action to a judgment and sale were each and all done by said Carpy maliciously and for the purpose of injuring said Dowdell & Son, and breaking them up in their business, or to compel them to make sale of their stock of wines to said Carpy or to some person or persons represented by him."

The defendant here, in addition to the denials of his answer, set up a counterclaim for the amount of said notes, and also a counterclaim for the amount of the judgment rendered upon those notes, alleging that no part of the same had ever been paid. As to these counterclaims the court found, in addition to the facts before stated, that the latter judgment had not been paid, but that "neither the whole amount of the principal, nor any portion thereof, nor any interest referred to in said notes, remains due or unpaid to the defendant," and further found that said notes "were not, nor was either of them, duly sold, assigned, or transferred to this defendant. They were taken by the defendant for the purposes aforesaid, and with full knowledge of the arrangement which had been made between the bank and Chevalier and the Dowdells, by the terms of which the notes were to be paid out of the proceeds of the sale to Chevalier, and not otherwise."

From the judgment in this cause and from an order denying his motion for a new trial the defendant Carpy now appeals to this court.

1. The first and most important question presented for consideration on this appeal relates to the measure of damages

in a case where suit is brought, as here, to recover for property sold under an execution based on a judgment which is subsequently reversed. We think that section 957 of the Code of Civil Procedure is the law of the state on this subject, and furnishes us with an unambiguous measure of recovery not difficult to understand. The section referred to reads as follows:—

"When the judgment or order is reversed or modified, the appellate court may make complete restitution of all property and rights lost by the erroneous judgment or order, *so far as such restitution is consistent with protection of a purchaser of property at a sale ordered by the judgment, or had under process issued upon the judgment, on the appeal from which the proceedings were not stayed; and for relief in such cases the appellant may have his action against the respondent enforcing the judgment for the proceeds of the sale of the property, after deducting therefrom the expenses of the sale.* When it appears to the appellate court that the appeal was made for delay, it may add to the cost such damages as may be just."

The part of the section italicized was added by amendment in 1874; and it is clear that if this part of the section is to be given any force at all, the right of recovery, where the appellant seeks his remedy by action and the property on the execution sale has passed into the hands of a third person beyond the reach of the execution creditor, must be limited, as expressly stated in the statute, to the proceeds of the execution sale after deducting therefrom the expenses of the sale. This rule seems to be in accordance with the rule laid down in England and in at least some of the states of the Union other than California. (*Peck* v. *McLean,* 36 Minn. 228;[1] *Gay* v. *Smith,* 38 N. H. 171.) Such being the rule in this state, it follows that the judgment, in so far as it awards relief in excess of the amount received on the execution sale after deducting the costs mentioned in the statute, is erroneous.

2. We also think that it is equally clear that the judgment pleaded by defendants constituted a valid counterclaim to plaintiffs' cause of action, and it should have been treated as such by the trial court. It was stipulated that the decree in

[1] 1 Am. St. Rep. 665.

that case "shall be treated and considered for all purposes of set-off or counterclaim the same as though the sale directed by said judgment had been made as directed thereby and a deficiency judgment had been entered therein as directed by said judgment for such sums so found due to the plaintiff therein; and all objection to said decree as a counterclaim herein for said amounts, so far only as objection has been or may be made upon the grounds that it is a decree for the foreclosure of a mortgage, and that the sale directed thereby has not been made and a deficiency judgment entered therein is hereby waived." On the appeal taken from that judgment no bond staying execution had been filed, and, treating it as a deficiency judgment in accordance with the stipulation, there was, then, nothing to prevent an action being brought on such judgment at any time after it was rendered. (*Taylor* v. *Shew,* 29 Cal. 536;[1] *Clark* v. *Child,* 136 Mass. 344.) The judgment was a proper basis for an action; and as it arose out of the same transaction and is connected with the subject of this action, it was clearly the proper basis for a counterclaim herein. (Code Civ. Proc., sec. 438.)

3. It is equally clear that plaintiff was not entitled to recover attorneys' fees in the action. Section 957 of the Code of Civil Procedure precludes any such recovery.

The judgment and order should be reversed.

Cooper, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

McFarland, J., Temple, J., Henshaw, J.

[1] 2 Am. Rep. 473.