[L. A. No. 15155. In Bank.—April 14, 1936.]

BARNEY OLDFIELD, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a Banking Association), Respondent.

Carroll Allen and A. E. McManus for Appellant.

Louis Ferrari, Edmund Nelson and G. L. Berrey for Respondent.

WASTE, C. J.—With such additional comments as will hereinafter appear, we adopt as part of the decision of this court the following portions of the opinion heretofore prepared in this cause by Mr. Justice Willis, sitting *pro tempore* in the District Court of Appeal of the Second Appellate District, Division Two:

"This is an appeal by plaintiff from a judgment, and is based on the judgment roll alone. The facts of the case are therefore those reflected by the findings of fact, hereinafter stated, and the main question herein is whether or not those findings support the conclusion of the court and its judgment based thereon.

"On August 1, 1926, appellant obtained a judgment against one J. M. Danziger for $10,000, on which two writs of execution were issued and levies made thereunder by the sheriff of Los Angeles county on California Bank, a banking corporation, on April 27, 1927, and January 28, 1929, respectively, garnishing certain property and money then in the possession of said bank and claimed by appellant to belong to said Danziger, but which money and property the trial court found in this case did not belong to him. Other persons made claim to part or all of said money and property, among them being Ivan R. Bean, whom the court found was an assignee of the respondent bank for the purpose of collecting the claim he represented. On February 19, 1929, the California Bank

filed an interpleader action against the sheriff, this appellant, said Ivan R. Bean, Edith Wake Danziger and Lina Danziger, and others, in which action an order was entered permitting the California Bank to deposit the money and property, subject to the adverse claims of the parties, with the clerk of the superior court, said property including the sum of $15,081.12 in cash. Upon deposit of the money and property the California Bank was dismissed from the case.

"In the interpleader action said Ivan R. Bean appeared and answered, with other defendants. On April 25, 1930, judgment therein was entered against this appellant adjudging that said money and property belonged to Edith Wake Danziger, subject to a lien thereon or interest therein in favor of Lina Danziger in the amount of $4,400, and that said Ivan R. Bean had no interest therein or right thereto. The court further found that it was not true that said money and property of the value of $40,000 were ordered by the court to be deposited with the clerk of said court pending the final determination of said cause. At that time there was a rule of the superior court in and for Los Angeles county, number 41, providing the procedure for securing an order of court for withdrawal of moneys or property deposited under sections 572, 573 and 574 of the Code of Civil Procedure, by which it was in substance provided that upon filing by the claimant of his verified petition setting forth the basis of his claim and giving the names of all parties interested therein, the presiding judge should order the custodian of said funds and all other persons interested therein and named in said order to show cause in the law and motion department at a time specified why an order should not be made directing the delivery or payment thereof to the petitioner, and that after such hearing the court should make such order as might be necessary or proper. On May 2, 1930, a stipulation was made and filed in said interpleader cause whereby Edith Wake Danziger and Lina Danziger on their part and Ivan R. Bean on his part stipulated that out of the funds deposited with the clerk of said court there should be paid to said Ivan R. Bean the sum of $3,000 in consideration of his waiving all his claim, right, title and interest in and to said fund, which by inference was based on an execution lien on a judgment against J. M. Danziger, and of waiving his right of appeal in said action and satisfying his judgment against J. M. Danziger

to the extent of $3,000; and thereupon the presiding judge of said court entered an order for the payment of said sum of money to said Ivan R. Bean, the said sum was paid to him on May 2, 1930, and he thereupon satisfied his judgment against J. M. Danziger to the amount of $3,000. Later on the same day all the remaining portion of the funds on deposit was withdrawn by Edith Wake Danziger and Lina Danziger and Charles Montgomery.

''The court further found that no hearing was held upon any petition for delivery of the moneys in said deposit as provided in said rule of court. Also the court found that it was not true that Ivan R. Bean and respondent bank knew or should have known that said funds were so procured fraudulently and in violation of the rights of the appellant, and that it was not true that the whole transaction of procuring said funds was done for the purpose of cheating and defrauding appellant out of his interest in said funds in the event that said judgment should be reversed on appeal.

''On April 30, 1930, notice of entry of the judgment in the interpleader cause was served on appellant, and on May 8, 1930, appellant filed a notice of appeal from said judgment, but he neglected to procure any stay of execution thereon.

''The court also found that during the time between judgment entry, on April 26, 1930, and the order of withdrawal of May 2, 1930, appellant had full notice and knowledge that said Ivan R. Bean and Edith Wake Danziger and Lina Danziger were negotiating respecting a settlement of the demands of said Ivan R. Bean against said J. M. Danziger and against the funds on deposit, and that said Ivan R. Bean intended to make a settlement with said J. M. Danziger and to procure the payment to him from said deposit and to release his claim to said funds and waive his right of appeal and give partial satisfaction of judgment to said J. M. Danziger. On May 2, 1930, on the stipulation and order above mentioned, the sum of $3,000 was paid from said funds to Ivan R. Bean, who waived right of appeal and entered partial satisfaction of his judgment against J. M. Danziger, and said Ivan R. Bean, as trustee for respondent bank, received said sum and paid the same over to respondent bank. When said sum was so paid over to Ivan R. Bean there was in said deposit a sum in excess of $28,000 in cash and other property of the value of upwards of $12,000. The court further found that by reason of delay

of appellant in procuring a stay of execution on the judgment in the interpleader cause and in permitting Edith Wake Danziger and Lina Danziger to withdraw a portion of said remaining funds, appellant was guilty of such laches as to prejudice respondent bank.

"On March 31, 1932, the Supreme Court [this court] reversed the judgment in the interpleader cause upon the grounds that as to appellant herein there had been a prior adjudication that the said funds belonged to said J. M. Danziger (*California Bank* v. *Traeger*, 215 Cal. 346 [10 Pac. (2d) 51]). Thereafter said cause was retried and a judgment was entered therein on June 9, 1933, adjudging this appellant to be entitled to and that he has a first lien in the sum of $10,000 with certain interest 'on the money and securities heretofore deposited with the clerk of this court', describing the same, and that J. M. Danziger is entitled, after the lien of appellant shall have been satisfied, to the balance of said money and securities, and that Edith Wake Danziger and Lina Danziger and other defendants, other than J. M. Danziger and appellant, take nothing by said action. An appeal from this judgment taken by Edith Wake Danziger and Lina Danziger was dismissed.

"On these facts the court herein concluded that appellant was not entitled to recover anything from respondent, and judgment was accordingly entered from which this appeal is taken.

"Appellant claims that he is entitled to recover from respondent bank the amount received by it through its trustee Ivan R. Bean out of the deposit in the hands of the clerk of the court, on the theory that respondent obtained the same under an erroneous judgment, afterwards reversed. There is a general rule that a party obtaining through a judgment, before reversal, any advantage or benefit, must restore what he got to the other party, after the reversal. (*Reynolds* v. *Harris*, 14 Cal. 667, 681 [76 Am. Dec. 459]; *Cowdery* v. *London etc. Bank*, 139 Cal. 298 [73 Pac. 196, 96 Am. St. Rep. 115]; *Ward* v. *Sherman*, 155 Cal. 287 [100 Pac. 864].) Herein appellant claimed an execution lien on the money and property taken into custody by the court in the interpleader cause, to the extent of the amount of his judgment against J. M. Danziger. The court in that cause was called upon to ascertain and determine the nature and order of priority of

the claims of defendants therein. It adjudged that neither appellant nor Bean had any lien or valid claim upon the money and property, but that Edith Wake Danziger and Lina Danziger were the owners thereof and entitled thereto. By the judgment appellant's execution lien was voided. In the absence of any stay of execution the successful parties last above named stipulated that Bean should have $3,000 of the funds on deposit, in consideration of his waiving his claim on the funds and his right to appeal and of his satisfying a judgment against J. M. Danziger to the extent of $3,000. On this stipulation the presiding judge ordered the payment of that sum to Bean, who received and delivered it over to respondent bank as he was bound to do, and he thereupon gave up his right to appeal and satisfied the judgment against J. M. Danziger *pro tanto*.

"It is clear that in this action the court cannot restore the $3,000 above mentioned to appellant without placing respondent bank in the position of having waived its claim through its trustee, Bean, to the funds and of having satisfied a judgment against J. M. Danziger to the extent of $3,000, and then also being deprived of the $3,000. In *Ward* v. *Sherman, supra,* it is said: 'Where a judgment or decree of an inferior court is reversed by a final judgment on appeal, a party is in general entitled to restitution of all things lost by reason of the judgment in the lower court, and, accordingly, the courts will, where justice requires it, place him as nearly as may be in the condition in which he stood previously.' . . . The money in question was withdrawn by Edith Wake Danziger and Lina Danziger, to whom it was adjudged by the judgment, not by Bean as the beneficiary under such judgment."

The sentence last quoted points to the propriety of the judgment here questioned. It was Lina and Edith Wake Danziger, the beneficiaries under the judgment, who withdrew the fund prior to the noticing of appellant's appeal therefrom and paid a portion thereof over to respondent's assignee. The appellant's complaint so alleges. At the time of such withdrawal, and in the absence of a stay of execution, the Danzigers were entitled to the fund under the authorities above cited. In the absence of a stay, it was only upon a reversal of the judgment on appeal that appellant was in a position to again make claim to the fund. However, upon such

reversal of the judgment, the obligation to make restitution of the fund, whether or not withdrawn in compliance with the rule of court covering such withdrawals, was peculiar to and rested solely upon the beneficiaries of the judgment who had withdrawn the same. In the absence of fraud, and the trial court found against appellant on this issue, the respondent as recipient of a portion of the fund from the Danzigers, withdrawn by the latter at a time when it was adjudged to be their property, is not required to restore the same or its equivalent to the appellant. The mere fact that at one time respondent, through its assignee Bean, was a claimant to a part of the fund, places it in no different legal position, in our opinion, than any other third person to whom the Danzigers may have paid over a portion of the withdrawn fund. As stated above, Bean by waiving all claim to the fund and surrendering his right of appeal from the judgment awarding it to the Danzigers, furnished ample consideration for the payment to him.

The case of *Garrett* v. *Jensen,* 44 Cal. App. 99 [186 Pac. 156], involved litigation between a widow and minor heir over the proceeds of an insurance policy which had been deposited in court by the insurance company and the rival claimants thereto interpleaded. The fund was adjudged to belong to the minor who, through his guardian, came into the possession of the greater part thereof after a stay of execution had expired and prior to the widow's appeal from the judgment. A portion of the fund was then paid by the guardian to an attorney named Lady who had formerly appeared for the insurance company but who thereafter assisted the guardian in obtaining the fund. Upon appeal, the judgment was reversed and the widow was adjudged to be entitled to the fund. She thereupon brought an action naming as defendants, among others, the guardian of the minor, who had received the money, and Lady, to whom the guardian had paid over a portion thereof. The latter defendant alone resided in Los Angeles County wherein the action was commenced. If said defendant was a necessary party or if the complaint stated a cause of action against him, the action was properly commenced in the county of his residence; otherwise a change of venue was proper. In affirming the order granting such change of venue, it was held that the complaint failed to state

a cause of action against Lady and that he was not a necessary party defendant. The opinion declares:

"If, on December 23, 1915—the day on which all the transactions were had that eventuated in the payment of the money by the county treasurer to the guardian of the minor—the latter was entitled to the possession of the money, then Lady's participation in those transactions was not wrongful or illegal. A judgment adjudging the minor to be entitled to the money had been entered; the stay of execution upon that judgment had expired . . . ; and no appeal from the judgment had as yet been taken. There is no room, therefore, for the claim that, at the time when the money was received by the guardian, proceedings on the judgment had been suspended by any appeal therefrom, or that, at that time, *supersedeas* might issue to prevent an enforcement of the judgment in favor of the minor. The order of the court directing the county treasurer to pay the money to the guardian was, under the circumstances, a proper proceeding for the enforcement of the judgment that had been given and made in the minor's favor. At the time when, on order of the court, the money was paid by the county treasurer to the guardian, there was a legal right in the minor to demand and receive it, or to enforce payment of it by some suitable method for enforcing the judgment that had been given and made in his favor. Doubtless the reversal of the judgment by the District Court of Appeal gave plaintiff a right or cause of action against the minor or his guardian. But that was a newly created right. It was a right created by the reversal of the judgment of the trial court and the entry of a new judgment—a judgment in favor of plaintiff, the widow of the insured, as directed by the District Court of Appeal. The reversal created a legal obligation on the part of the minor or his guardian to restore what the plaintiff here had lost by reason of the erroneous judgment of the trial court in that action. But the payment of the money to defendant Jensen, as the guardian of the minor, before plaintiff had taken any appeal from the judgment, was legal, and the reversal of that judgment did not have a retrospective operation so as to make void that which was lawful when done. . . .

"If, at the time when the money was paid over to his guardian, the minor was entitled to an enforcement of the judgment that had been made in his favor, and he unquestionably

was, then the fact that Lady had been the attorney for the insurance company and was not the attorney of record for the minor cannot lay him under any liability. If, as we hold, the guardian, at the time when the money was paid to her by the county treasurer, had the right to enforce the judgment that had been made in her ward's favor and compelled payment to herself as guardian, the means and instrumentalities whereby she accomplished that result do not concern plaintiff.

"The complaint alleges that, after the money was received by the guardian, the defendants—and that, of course, includes the defendant Lady—'appropriated' to their own use a large part of the money. Manifestly this can mean no more than that, after the money came into the possession or under the control of the guardian in the manner heretofore detailed, she paid or gave a part of it to Lady and the latter then used it as he saw fit. But that fact would not give plaintiff a cause of action against Lady for the part of the money that thus may have been paid to him by the guardian and then applied by him to his own use, unless, at the time when he received it from the guardian, it was then held by the latter as a trust fund. While it is true that, as claimed by appellant, equity will enforce a trust against all persons who, with notice of the trust, may come into the possession of the trust property, nevertheless, to entitle appellant to follow the money into the hands of Lady and recover it from him as part of a trust fund held in trust for her, she must first show that when Lady received it from the guardian, the latter then held it as a trust fund in trust for appellant. This the complaint fails to do. . . . As we have seen, on December 23, 1915, when the money was paid by the county treasurer to the guardian, or to some agent of the guardian, she, as the guardian of the minor in whose favor the judgment of the trial court had been entered, was entitled to an enforcement of the judgment— entitled to have the money paid to her for her ward. And not until the judgment of the District Court of Appeal reversing the judgment of the trial court became final did any obligation rest upon the guardian to return any part of the $4,074.

"On the reversal of an erroneous judgment, but not before, the law raises an obligation on the part of any party to the action who may have received the benefit of the judgment to make restitution to the other party for what the latter has

lost. Until the reversal, the party who may have received satisfaction under the erroneous judgment·may justify under it and under any execution issued thereon, for the erroneous judgment is the act of the court. (*Bank of United States* v. *Bank of Washington, supra* (6 Pet. 8 [8 L. Ed. 299]) . . .) Until the reversal of the judgment by the District Court of Appeal the money that had been received by the guardian from the county treasurer was not held by her as a trust fund; until then it was not stamped with the character of a trust.''

This case was cited with approval in *Levy* v. *Drew*, 4 Cal. (2d) 456 [50 Pac. (2d) 435, 101 A. L. R. 1144].

The decision in *Bank of United States* v. *Bank of Washington*, 6 Pet. (31 U. S.) 8 [8 L. Ed. 299], referred to in the above quotation, contains the following language:

''In neither case, does the party against whom the erroneous judgment has been enforced, lose his remedy against the party to the judgment. On the reversal of the judgment, the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost; and the mode of proceeding to effect this object must be regulated according to circumstances. . . . But as it respects third persons, whatever has been done under the judgment, whilst it remained in full force, is valid and binding. A contrary doctrine would be extremely inconvenient, and in a great measure tie up proceedings under a judgment, during the whole time within which a writ of error may be brought. . . .

''The reversal of the judgment cannot have a retrospective operation, and make void that which was lawful when done. The reversal of the judgment gives a new right or cause of action against the parties to the judgment, and creates a legal obligation on their part to restore what the other party has lost, by reason of the erroneous judgment; and as between the parties to the judgment, there is all the privity necessary to sustain and enforce such right; but as to strangers, there is no such privity; and if no legal right existed when the money was paid, to recover it back, no such right could be created by notice of an intention so to do.''

As stated above, a portion of the deposited fund was withdrawn by Lina and Edith Wake Danziger, beneficiaries under the original judgment, and paid over to Bean, respondent's assignee for collection, upon the furnishing of substantial con-

sideration therefor. Bean did not take as assignee of the judgment or of a part thereof and is not therefore subject to the same responsibility as the original beneficiaries.

Our conclusion makes it unnecessary to pass upon the issue of laches, which the trial court resolved against appellant. In view of our disposition of the cause we may treat the findings on that issue as surplusage.

The judgment is affirmed.

Curtis, J., Seawell, J., Thompson, J., and Conrey, J., concurred.