### COMMISSIONER OF INTERNAL REVENUE v. ALAMITOS LAND CO.
### No. 9404.

Circuit Court of Appeals, Ninth Circuit.
June 10, 1940.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Louise Foster, and Paul R. Russell, Sp. Assts. to Atty. Gen., for petitioner.

Melvin D. Wilson, of Los Angeles, Cal., and Thomas B. Irvine, of Long Beach, Cal., for respondent.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

Petitioner seeks to review a decision of the Board of Tax Appeals determining the taxable income of the Alamitos Land Company, respondent, for the year 1932. During that year, on July 8, 1932, the respondent collected a judgment of the Superior Court of Los Angeles County, California, against the Shell Oil Company, for $522,895.11, entered June 20, 1932.[1] Subsequently, on April 26, 1935, the Supreme Court of California reversed the judgment and remanded the case for retrial. Alamitos Land Co. v. Shell Oil Co., 3 Cal.2d 396, 44 P.2d 573.

Thereafter, on June 4, 1935, respondent repaid to the Shell Oil Company the sum of $522,895.11, together with two items of interest derived from its investment of $41,286.09 and $11,595.31, for the purpose of restoring to the Shell Oil Company the amount it had paid upon the judgment with the income derived therefrom during its possession by the respondent.

In 1938 the litigation was settled by the payment of $100,000 to the respondent. The Commissioner held that the amount paid upon the judgment was income to the respondent for the year 1932. The respondent petitioned the Board of Tax Appeals for a review of that determination. Its petition was sustained and the Commissioner petitions this court for a review of that decision.

The principal question for review is whether or not the amount of the judgment paid by the Shell Oil Company to the respondent was taxable income to it for the year 1932. The respondent contends that in view of the contingency of a successful appeal the fund paid to it was in the nature of a trust fund as to which it had only a qualified ownership which removed it from the domain of taxable income because, under the law of California moneys paid or collected or property transferred in compliance with the judgment of a lower court subsequently reversed is a trust fund to be held by the party subject to the results of the appeal. To support the contention that the money paid to the respondent upon the judgment was a trust fund the respondent proved that the money paid to it was at once placed in a savings bank at interest and that upon the books of the corporation it was set up as a fund reserved to be repaid to the Shell Oil Company in the event that company was finally successful in the pending litigation. Thereafter, in 1933, $252,000 of the fund was invested in United States Treasury notes. The question of whether or not money paid upon a judgment or order is taxable income of the judgment creditor for the year in which it was paid, not-

---

[1] This amount was claimed for unpaid royalties due under an oil and gas lease.

withstanding the possibility of a reversal of the judgment or order had recently been considered by the Supreme Court in North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, affirming the decision of this court (50 F.2d 752). In this case most of the points raised by the respondent herein were determined adversely to its contentions. It was held that the amount so paid was taxable income for the year in which it was paid, although the taxpayer claimed that it kept its books on an accrual basis. North American Oil Consolidated v. Burnet, supra, 286 U.S. at page 421, 52 S.Ct. 613, 615, 76 L.Ed. 1197. The Supreme Court held that it was immaterial whether the taxpayer filed a return on a cash or accrual basis for in neither event was it liable for a tax "on account of income which it had not yet received and which it might never receive". The court said: "The net profits earned by the property in 1916 were not income of the year 1922—the year in which the litigation with the government was finally terminated. They became income of the company in 1917, when it first became entitled to them and when it actually received them. If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. See Board v. Commissioner, [6 Cir.], 51 F.2d 73, 75, 76. Compare United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 403, 47 S.Ct. 598, 71 L.Ed. 1120. If in 1922 the government had prevailed, and the company had been obliged to refund the profits received in 1917, it would have been entitled to a deduction from the profits of 1922, not from those of any earlier year. Compare Lucas v. American Code Co. [280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010], supra."

The respondent seeks to distinguish the case at bar from North American Oil Cons. v. Burnet, supra, by the claim that under the California law, the fund collected by the judgment creditor is a trust fund in the hands of the judgment creditor until the appeal is disposed of, and if the judgment is reversed it must be held as a trust fund until returned to the judgment debtor. This contention was upheld by the Board of Tax Appeals. In support of this proposition the respondent relies upon § 957 of the California Code of Civil Procedure regulating the rights of the parties in case a judgment is ordered reversed or modified and upon the decisions of the Supreme Court of California in Ward v. Sherman, 155 Cal. 287, 100 P. 864; Asato v. Emirzian, 177 Cal. 493, 171 P. 90; Dowdell v. Carpy, 137 Cal. 333, 70 P. 167; City of Oakland v. Buteau, 219 Cal. 745, 29 P.2d 177; Levy v. Drew, 4 Cal.2d 456, 459, 50 P. 2d 435, 101 A.L.R. 1144; Oldfield v. Bank of America Nat. Trust & Savings Ass'n, 6 Cal.2d 103, 110, 56 P.2d 1235.

The cases cited do not support the respondent's contention as to the law of California. On the contrary, they fully sustain the proposition that when the money is paid on a judgment where the collection has not been stayed by supersedeas the money belongs to the judgment creditor and remains his unless he disposes of it until the reversal of the judgment. It is on the reversal of the judgment that the trust relationship arises. The cases cited are in accord with the uniform rule to the effect repeatedly stated in the decisions of the California Supreme Court. The rights of the parties to such a judgment during the appeal and after reversal are clearly stated in a recent decision of the Supreme Court of the State of California. Oldfield v. Bank of America Nat. Trust & Savings Ass'n, 6 Cal.2d 103, 110, 56 P.2d 1235, 1239. In that case the court said, in quoting with approval from Garrett v. Jensen, 44 Cal.App. 99, 186 P. 156:

"At the time when, on order of the court, the money was paid by the county treasurer to the guardian, there was a legal right in the minor to demand and receive it, or to enforce payment of it by some suitable method for enforcing the judgment that had been given and made in his favor. Doubtless the reversal of the judgment by the District Court of Appeal gave plaintiff a right or cause of action against the minor or his guardian. But that was a newly created right. It was a right created by the reversal of the judgment of the trial court and the entry of a new judgment—a judgment in favor of plaintiff, the widow of the insured, as directed by the District Court of Appeal. The reversal created a legal obligation on the part of the minor or his

guardian to restore what the plaintiff here had lost by reason of the erroneous judgment of the trial court in that action. But the payment of the money to defendant Jensen, as the guardian of the minor, before plaintiff had taken any appeal from the judgment, was legal, and the reversal of that judgment did not have a retrospective operation so as to make void that which was lawful when done. * * *

"The complaint alleges that, after the money was received by the guardian, the defendants—and that, of course, includes the defendant Lady—'appropriated' to their own use a large part of the money. Manifestly this can mean no more than that, after the money came into the possession or under the control of the guardian in the manner heretofore detailed, she paid or gave a part of it to Lady and the latter then used it as he saw fit. But that fact would not give plaintiff a cause of action against Lady for the part of the money that thus may have been paid to him by the guardian and then applied by him to his own use, unless, at the time when he received it from the guardian, it was then held by the latter as a trust fund. While it is true that, as claimed by appellant, equity will enforce a trust against all persons who, with notice of the trust, may come into the possession of the trust property, nevertheless, to entitle appellant to follow the money into the hands of Lady and recover it from him as part of a trust fund held in trust for her, she must first show that when Lady received it from the guardian, the latter then held it as a trust fund in trust for appellant. This the complaint fails to do. * * * As we have seen, on December 23, 1915, when the money was paid by the county treasurer to the guardian, or to some agent of the guardian, she, as the guardian of the minor in whose favor the judgment of the trial court had been entered, was entitled to an enforcement of the judgment —entitled to have the money paid to her for her ward. And not until the judgment of the District Court of Appeal reversing the judgment of the trial court became final did any obligation rest upon the guardian to return any part of the $4,074.

"On the reversal of an erroneous judgment, but not before, the law raises an obligation on the part of any party to the action who may have received the benefit of the judgment to make restitution to the other party for what the latter has lost. Until the reversal, the party who may have received satisfaction under the erroneous judgment may justify under it and under any execution issued thereon, for the erroneous judgment is the act of the court. Bank of United States v. Bank of Washington, supra (6 Pet. 8, 8 L.Ed. 299)."

The court then quotes with approval from the decision of the Supreme Court of the United States in the case cited by it, supra (6 Pet. 8, 31 U.S. 8, 8 L.Ed. 299), as follows: "The reversal of the judgment cannot have a retrospective operation, and make void that which was lawful when done. The reversal of the judgment gives a new right or cause of action against the parties to the judgment, and creates a legal obligation on their part to restore what the other party has lost by reason of the erroneous judgment; and as between the parties to the judgment, there is all the privity necessary to sustain and enforce such right; but as to strangers there is no such privity, and if no legal right existed when the money was paid, to recover it back, no such right could be created by notice of an intention so to do."

We conclude that under the law of California, as interpreted by the Supreme Court of the State, the respondent was the absolute owner of the money paid to it and that it was part of its taxable income.

Some other points presented remain to be considered. The respondent set up in its account books a statement that the fund received from the Shell Oil Company, judgment debtor, was subject to be returned in case the judgment was reversed. The fact that the respondent indicated in its books an intention not to exercise its power of absolute dominion over the fund could not change its status as income.

Another point is involved which is only material because of our holding that the money received under the judgment is taxable income. It appears from the record that the respondent entered into a contract with Shepard-Pendleton, Ltd., a corporation, whereby it was agreed that the corporation should assist the respondent in determining the quanti-

ty and quality of the oil produced from the leased premises of the Shell Oil Company, conduct any litigation brought to recover unpaid royalties and pay all attorneys' fees and costs in that action for which the corporation received 35 per cent of the "amount recovered from Shell whether with or without litigation". The Commissioner allowed this deduction of 35 per cent amounting to $182,205.76 in determining the taxable income of the respondent for the year 1932, but after the petition of respondent for review of his decision the Commissioner, by his answer thereto, alleged that this deduction was erroneous and sought to have it determined by the Board of Tax Appeals that it should not be allowed. The Board of Tax Appeals having held that the amount recovered was not taxable at all stated in its opinion: "The amount of $182,205.76, representing the interest of Shepard-Pendleton in the proceeds of the judgment, is claimed by the petitioner as a deduction only in the event that it is held taxable on the trust fund. It was not deducted in the petitioner's income tax return for 1932 and, consequently, no question is raised for us to decide."

The respondent argues that the contract between it and Shepard-Pendleton operated as an equitable assignment pro tanto of the judgment and, consequently, when the amount thereof was paid to the respondent 35 per cent of it belonged to Shepard-Pendleton. In support of its contention it also showed that after the money paid on the judgment was deposited with the savings bank an agreement was entered into between the respondent and Shepard-Pendleton that the money should not be withdrawn from the bank except by consent of Shepard-Pendleton and afterward when some of the money was withdrawn for the purchase of securities of the United States it was done with the consent of Shepard-Pendleton.

The Commissioner now contends that the indebtedness to Shepard-Pendleton would not accrue until final recovery and therefore did not accrue at all as there was no final recovery. In view of the fact that the Board of Tax Appeals has not considered or determined the right of the respondent to deduct this amount we do not anticipate such a decision but remand the case to the Board of Tax Appeals for finding and decision thereon.

A further point is raised by respondent, namely, that the interest was not taxable which was received by the respondent upon tax exempt securities of the United States which it had purchased with the funds in question. The Board of Tax Appeals held that inasmuch as this interest had been turned over to the Shell Oil Company by way of restitution it is not taxable to the petitioner. Our decision with reference to the principal item will require a consideration of this question of tax exemption by the Board of Tax Appeals.

The order of the Board is vacated and the case is remanded to it for its determination of the taxable income of the respondent and of the tax thereon in accordance with this opinion, and its finding and conclusion with reference to the taxability of interest derived from the United States Treasury notes purchased by respondent with the proceeds of the judgment, and the deductibility of the claim of Shepard-Pendleton, Ltd., for the year 1932.