**Georgia KOTSILIERIS, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services, Defendant.**

No. 93 C 3833.

United States District Court,
N.D. Illinois,
Eastern Division.

July 19, 1994.

Michael J. Walkup, Walkup & Associates, Palatine, IL, for plaintiff.

---

1. The Court notes, however, that the action may now be barred on other equitable grounds.

Jack Donatelli, U.S. Attys. Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

On July 16, 1991, plaintiff Georgia Kotsilieris ("Kotsilieris") filed an application for disability insurance benefits and for supplemental security income under Title II and Title XVI of the Social Security Act. Kotsilieris alleges that she has been disabled since March 19, 1991, due to arrhythmia, cardiac arrest, panic attacks, and agoraphobia. Her application was denied initially and upon reconsideration. Kotsilieris then filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on September 16, 1992 before ALJ John L. Mondi. Dr. Sheldon Slodki, a medical expert, was also present at the hearing. On December 23, 1992, the ALJ issued a decision finding that the plaintiff was not entitled to disability benefits because she retained the residual functional capacity ("RFC") to perform her past relevant work. (R. 60). This became the final decision of the Secretary of Health and Human Services (the "Secretary") when the Appeals Council denied plaintiff's request for review on April 26, 1993. (R. 4–6). Both parties moved for summary judgment, and the plaintiff moved in the alternative for remand. For the reasons stated below, the plaintiff's motion for summary judgment is denied, and her motion in the alternative for remand is granted. The defendant's cross-motion for summary judgment is denied. This case is remanded to the Secretary for further proceedings in accordance with this opinion and order.

### Background

#### I. Work History

Kotsilieris was born in Greece on October 25, 1947, making her 45 years old at the time of the ALJ's decision. (R. 52, 73). She completed grammar school in Greece, and has had no further education. (R. 260). Kotsilieris worked for M & M Mars Candy Co. from April 1966 to February 1979 as a factory worker. The job required her to stand for 8 hours a day and lift weight of up to 10 lbs. (R. 120–121). She worked as a restaurant worker from December 1979 to May 1983. In this position, Kotsilieris spent 8 hours a day walking and standing and was required to bend frequently and lift weight of up to 10 lbs. (R. 120, 122). Kotsilieris worked for Dana Corporation as a factory worker from February 1984 to September 1989. This job involved lifting weight of up to 50 lbs., standing for 8 hours, and operating a punch press. (R. 120, 123). She worked in a printing shop from September 1990 to February 1991, a job requiring her to stand for 8 hours a day and lift boxes of up to 50 lbs. (R. 120, 124). Kotsilieris also worked for a mailing company from March 1991 to April 1991. (R. 120). She worked as a temporary employee in a factory from October 1991 to February 1992 through the Kelly Services temporary jobs agency. (R. 133). Kotsilieris testified that she was looking for work a week prior to the hearing. (R. 263).

#### II. Medical History

Kotsilieris claims that she became disabled on March 19, 1991. She testified that she began having chest pains on that date but continued to try to work. (R. 278). On April 18, 1991, Kotsilieris was admitted to the Oak Park Hospital emergency room for complaints of heart palpitations and chest pains. (R. 136). She underwent diagnostic studies there, including a lung perfusion scan, chest x-ray, blood tests, and an ecocardiogram ("EKG"). (R. 135–159). Kotsilieris was diagnosed with atrial fibrillation (essentially, an irregular heart beat). (R. 146).

On April 21, 1991, the day after she was discharged from Oak Park Hospital, Kotsilieris was admitted to the Loyola University Hospital for symptoms of dizziness, nausea, and near syncopal episode. (R. 162). Further studies were performed at the Loyola University Medical Center in May 1991. Her EKG reports were normal. (R. 172–174). A stress examination was terminated due to general fatigue. (R. 175). Abnormal exercise stress was found, and ventricular arrhythmias were noted on the stress examination report. (R. 175). In another test, a stress/rest thallium scan produced normal re-

salts. (R. 176). An abnormal Holter test reported paroxysmal supraventricular tachycardia (excessively rapid heart action which can come and go abruptly). (R. 181).

## III. Expert Opinion

On August 12, 1991, Kotsilieris's primary treating physician, Dr. S.C. Lin, reported that Kotsilieris experienced sharp chest pain precipitated by emotional upset, and added that the chest pain could be relieved by tranquilizers. Dr. Lin noted that Kotsilieris had frequent anxiety and panic attacks, with hyperventilation and dizziness. He further noted that Kotsilieris was limited in her ability to do work-related activities. (R. 204). Another treating physician, Dr. Frank Leya, reported on August 20, 1991 that in his opinion, Kotsilieris had no limitations on her ability to work due to her heart problems. (R. 202). On August 27, 1991, Dr. Lin gave his opinion that Kotsilieris was not suffering from a mental impairment and that he was not treating her for a mental impairment. He noted once again that Kotsilieris experienced panic attacks and that her heart rate increased at these times. (R. 215). Both Dr. Lin and Dr. Leya were treating Kotsilieris solely for her heart problems. (R. 201–206). At the hearing, Dr. Slodki was introduced as an impartial medical expert. Dr. Slodki testified that in his view as a cardiologist, Kotsilieris could perform the exertional demands of medium work. (R. 294).

## IV. Kotsilieris' Testimony

Kotsilieris testified at the hearing that she has problems standing or sitting for very long, and that she experiences leg pains and dizziness if she does so. (R. 267). She further testified that her heart beats fast if she climbs stairs or bends. (R. 267). In terms of her ability to lift heavy objects, Kotsilieris said that she could lift the weight of a grocery bag, but noted that when she worked in a television factory at a temporary job for Kelly Services, she felt a tightening in her chest when she had to lift objects of 20 or 30 lbs. (R. 268, 278). Kotsilieris testified that she left her last job because of chest pains. (R. 280).

## V. Mental Impairment

The record indicates that Kotsilieris suffers from an affective disorder as well as a heart ailment. Kotsilieris testified at the hearing that she is depressed a lot of the time and has problems sleeping. (R. 268). She reportedly also has minor problems with her concentration. (R. 273). When asked by the ALJ, Kotsilieris said that her appetite was all right. (R. 270). She further testified that her husband helps her a great deal with the household chores, and that he drives her places because she is afraid to drive. (R. 272). She does not visit with friends, but does spend time with her sisters. She is afraid to leave the house by herself. (R. 283–286). Kotsilieris testified that she cries everyday. (R. 282). She said that her chest pains occur two or three times a day, when she exerts herself or when she gets upset about "little things" such as unpaid bills. (R. 287). Her husband testified that Kotsilieris does "small jobs" when she is at home. He said that her crying spells and sadness began in 1985 when their son disappeared and was never heard from again. (R. 288–290).

Consulting psychiatrist Dr. Gregory A. Teas performed a psychiatric examination of Kotsilieris on September 23, 1992. The examination was performed at Kotsilieris' request one week after the hearing. Dr. Teas reported that Kotsilieris' first panic episode occurred in 1989 following a car accident. Soon after the accident, Kotsilieris developed symptoms of severe anxiety, rapid heartbeat, shortness of breath, and shakiness. According to Dr. Teas, no real impairment resulted from the first panic episode. (R. 251). Her April 1991 panic attack, however, was more severe. Soon after its onset, Kotsilieris was rushed to the Oak Park Hospital by ambulance for an emergency cardiac work-up. (R. 251). As noted above, Kotsilieris was released two days later.

Although she took her prescribed medication and met with her primary physician as directed, Dr. Teas reported that Kotsilieris continued to experience panic attacks several times a week, each lasting from two to ten minutes. According to Dr. Teas, these attacks would sometimes occur more than once a day. (R. 251). As a result of these fre-

quent panic attacks, Kotsilieris developed typical agoraphobic avoidance behavior. Dr. Teas reported that Kotsilieris is afraid to leave the house unaccompanied, can only travel one half block if she is alone, and will not drive a car. He noted that she feels extremely anxious even at home, but that she feels more comfortable there than elsewhere, because there is almost always another family member at home with her. According to Dr. Teas, Kotsilieris has developed a number of other symptoms including a mild sleep disturbance, loss of appetite, and low energy. She has frequent crying spells and experiences difficulty concentrating. She spends most of her time at home, avoiding social contact. She displays a lack of interest in almost all activities. Dr. Teas noted that Kotsilieris' symptoms seemed to appear after the disappearance of her son. (R. 251).

Dr. Teas diagnosed a single episode of major depression with disabling panic attacks and agoraphobic behavior. (R. 252). He noted that her usual household activities, such as cooking and cleaning, are impaired by her disorder. Dr. Teas determined that Kotsilieris has been "nonfunctional" since approximately April 1991. (R. 253). He added that her condition appears to be treatable through proper psychiatric care. (R. 253). Although Dr. Lin has recommended that Kotsilieris see a psychiatrist for her other problems, she has not done so and has received no psychiatric treatment. (R. 281).

## VI. ALJ Determination

Based upon the evidence in the record, the ALJ initially determined that Kotsilieris has two severe impairments: ventricular arrhythmias and a mental impairment described as an affective disorder with panic attacks. (R. 60). The ALJ then found that Kotsilieris's impairments did not meet or equal the listings of impairments in 20 C.F.R. § 404, subpt. P, app. 1. (R. 60). With re-

gard to her affective disorder, he specifically found that she did not meet any of the four "severity criteria" listed in Appendix 1, § 12.-04(B).[1] He next determined that Kotsilieris has the RFC to perform work-related activities, except for work involving lifting more than 50 lbs. at a time. (R. 60). Since Kotsilieris's past relevant work as a punch press operator or factory worker did not require lifting more than 50 lbs. at a time, the ALJ concluded that Kotsilieris could perform her past relevant work without limitation and therefore was not disabled. (R. 60).

In reaching his decision, the ALJ found that Kotsilieris' testimony was not fully credible. In particular, the ALJ noted that her subjective complaints of pain and physical limitations were contradicted by the medical evidence in the record. He further observed that if Kotsilieris' mental impairment were as limiting as she suggests, she would have followed her physician's advice and sought out a psychiatrist instead of looking for work. (R. 60).

The ALJ also discounted Dr. Teas' conclusions about the degree of impairment resulting from Kotsilieris' affective disorder because of perceived inconsistencies between Dr. Teas' testimony and the remainder of the record, including the claimant's work history and her then recent efforts to secure additional employment. (R. 57). Instead, the ALJ relied upon Dr. Lin's statement that Kotsilieris did not have a mental impairment and Dr. Slodki's expert testimony that, from the cardiologist's point of view, Kotsilieris is capable of performing the exertional demands of medium work. (R. 59).

### *Discussion*

In reviewing the decision of an ALJ, the district court is required to review the entire record. *Meredith v. Bowen*, 833

---

1. The § 12.04(B) criteria are:
   1. Marked restriction of activities of daily living;
   2. Marked difficulties in maintaining social functioning;
   3. Deficiencies in concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere)

   4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

   To prevail on her claim, Kotsilieris must meet the requirements of at least two of these criteria.

F.2d 650, 653 (7th Cir.1987) If substantial evidence exists to support the ALJ's findings and there has been no error of law, the ALJ's decision regarding disability must be affirmed. *Ehrhart v. Secretary of Health & Human Services*, 969 F.2d 534, 538 (7th Cir. 1992). Substantial evidence is that amount of evidence that a reasonable mind might accept as adequate to support a conclusion. *Sample v. Shalala*, 999 F.2d 1138, 1141 (7th Cir.1993); *Schroeter v. Sullivan*, 977 F.2d 391, 394 (7th Cir.1992). The ALJ is required to afford a claimant a "full inquiry" of his or her claim before making a decision regarding disability. *Johnson v. Bowen*, 648 F.Supp. 443, 449 (N.D.Ill.1986). The decision of the ALJ is not supported by substantial evidence if the ALJ does not have before him sufficient facts on which to make an informed decision. *Ford v. Secretary of Health & Human Services*, 659 F.2d 66, 69 (5th Cir. 1981).

A disability is defined by the Social Security Act as the inability to engage in any substantial gainful activity because of a medically recognizable physical or mental impairment which may be expected to result in death or which has lasted or may be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c. The Social Security Administration employs a five step inquiry to determine whether a claimant is disabled: (1) Is the claimant presently employed? (2) Does the claimant have a severe impairment? (3) Does the claimant's impairment meet or exceed one of impairments listed? (4) Is the claimant able to perform his or her former occupation? (5) Is the claimant able to perform other work in the national economy? *See* 20 C.F.R. §§ 404.-1520, 416.920; *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir.1985).

Kotsilieris has pursued her disability claim on two grounds: mental and physical disability. On appeal, she appears to have abandoned her physical disability claim, characterizing her past heart trouble as a symptom of her underlying affective disorder. This latter claim is the focus of the court's inquiry here.

The ALJ based his determination that Kotsilieris' mental impairment is not sufficiently severe to qualify as a disability under the Social Security Act primarily on two factors: 1) certain inconsistencies between Dr. Teas' report and the remainder of the record, and 2) his assessment of plaintiff's credibility. Neither of these factors, taken either individually or together, convinces this court that there is substantial evidence in the record, *as presently developed*, to support the ALJ's finding. Finding that the ALJ should have ordered an independent psychological examination of Kotsilieris before determining that she retained the RFC to perform her past relevant work, the court remands this case for further findings on the scope and severity of Kotsilieris' mental impairment.

### *Inconsistencies in Dr. Teas' Report*

The ALJ chose to give limited weight to the report of the consulting psychiatrist Dr. Teas, relying instead on treating physician Dr. Lin's opinion that Kotsilieris does not have a mental impairment. (R. 57, 58). How the ALJ chooses to weigh the opinions of a treating physician and a consulting specialist must be supported by substantial evidence. *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir.1985). Here, ALJ Mondi dismissed Dr. Teas' assessment of the plaintiff's degree of disability because it was "not consistent with the remainder of the record, including the claimant's work history and current activity of seeking employment." (R. 57).

Specifically, the ALJ found Dr. Teas' report of disability due to a severe depressive disorder with disabling panic attacks or agoraphobic withdrawal to be inconsistent with the reports of treating physicians Dr. Lin and Dr. Leya, and medical expert cardiologist Dr. Slodki. At the outset, the court notes that Dr. Lin and Dr. Leya were both treating Kotsilieris for her cardiac arrhythmia, and were not primarily concerned with her mental ailment. (R. 113). There is no indication in the record that these doctors have any special expertise in psychology generally, or agoraphobia in particular.

In addition, Dr. Lin noted that Kotsilieris suffered from frequent anxiety and panic at-

tacks, hyperventilation, and dizziness, symptoms compatible with Dr. Teas's diagnosis and finding of disability. (R. 204, 205, 251–252). Dr. Lin found that Kotsilieris's chest pains were precipitated by emotional upset. (R. 204). Although Dr. Lin gave his opinion that "[t]here is no mental impairment," he also reportedly advised Kotsilieris to see a psychiatrist. (R. 215, 281). Both Dr. Lin and Dr. Leya rested their evaluations of Kotsilieris's ability to work upon their findings in relation to her heart condition, not her mental health. (R. 201–206). Similarly, Dr. Slodki, who testified at the hearing that Kotsilieris could perform past relevant work, gave his opinion strictly in his capacity as a cardiologist with no expertise in matters of mental health. (R. 293, 296). In light of these facts, this court remains unpersuaded that it was reasonable for the ALJ to favor the opinions of Dr. Lin, Dr. Leya, and Dr. Slodki over that of Dr. Teas, the only psychologist to examine the plaintiff.

The ALJ also pointed to the seeming tension between Dr. Teas' conclusion that Kotsilieris has been disabled since April 1991 and the fact that Kotsilieris worked as temporary factory worker from October 1991 to February 1992 and later looked for work. (R. 57). Kotsilieris had testified that although she did work as a temporary employee after April 1991, she experienced pain on the job. (R. 280). While clearly relevant, Kotsilieris' limited post-April 1991 employment activity hardly warrants a wholesale dismissal of Dr. Teas' evaluation of the severity of plaintiff's mental impairment, especially where no other psychiatric report appears in the record.

### Kotsilieris' Testimony

In discounting Kotsilieris' characterization of the scope and severity of her mental impairment, the ALJ placed particular emphasis on Kotsilieris' testimony that she had looked for work one week prior to the hearing. Notably absent from the record, however, was any information regarding the extent of her search. Naturally, if there were some indication in the record suggesting that Kotsilieris had walked around town unaccompa-

nied in search of employment, this evidence might have some real probative value. As the record now stands, however, it is impossible to gauge the significance of her efforts. The substantial evidence standard requires more.

The ALJ also focused on plaintiff's failure to consult a psychiatrist about her condition prior to initiating these proceedings. ALJ Mondi suggested that if Kotsilieris were truly disabled, she would have followed the advice of her physician and visited a psychiatrist. (R. 58). By factoring Kotsilieris' failure to consult into his analysis, the ALJ has arguably placed Kotsilieris into what one court has termed a "Catch–22 position: she [is] not allowed a consultative mental examination because she [has] not had psychiatric help in the past." *Holloway v. Heckler,* 607 F.Supp. 71, 73 (D.C.Kan.1985). Indeed, in a case such as this one where the alleged disability consists of a paralyzing fear of the unfamiliar, Kotsilieris' failure to seek out help is hardly surprising.

### Need for a Consultive Psychological Examination

Clearly lacking from the record on appeal is an independent consultative psychological examination of the plaintiff. Always important whenever the scope or severity of an alleged mental disability is at issue, such an examination would be particularly helpful here where the ALJ has specifically found that plaintiff suffers from a severe mental impairment.[2] "Generally, where the medical evidence includes a diagnosis of a mental condition impacting on a person's ability to perform a wide range of particular work, a consultative psychological examination should be ordered by the ALJ." *Johnson,* 648 F.Supp. at 449. Dr. Teas's diagnosis of Kotsilieris includes his opinion that she is "nonfunctional" and handicapped from performing any work outside of her home. (R. 252–253). While other evidence in the record suggests that Dr. Teas' evaluation of the severity of plaintiff's condition might not be entirely accurate, none of the other experts was able to squarely address the issue. Absent a consul-

---

2. In his list of findings, the ALJ states that "[t]he medical evidence establishes that the claimant has severe impairments: ventricular arrhythmias and a mental impairment described as an affective disorder with 'panic' attacks...." (R. 60).

tive examination focusing on the scope and severity of Kotsilieris' mental impairment, the record is incomplete. Under the circumstances, a psychological examination should have been ordered by the ALJ. Such an examination will nicely round out the rest of the evidence in the record and provide the ALJ with the "full inquiry" into plaintiff's claim that the Act requires.

### Conclusion

For the foregoing reasons, the cross-motions for summary judgment are denied, and the case is remanded for further findings on the scope and severity of plaintiff's mental impairment and alleged disability.