[L. A. No. 2016. In Bank.—March 6, 1909.]

## JOHN M. WARD, Appellant, v. MOSES H. SHERMAN, Respondent.

JUDGMENT—REVERSAL ON APPEAL—RESTITUTION OF PROPERTY.—Where a judgment or decree of an inferior court is reversed by a final judgment on appeal, a party is in general entitled to restitution of all the things lost by reason of the judgment in the lower court; and, accordingly, the courts will, where justice requires it, place him as nearly as may be in the condition in which he previously stood. The restitution may be directed and provided for in the original

action itself, or may be sought in a separate action instituted for that purpose.

ID.—RULES GOVERNING RESTITUTION—ACCOUNTING.—In such action the defendant must account for the property received under the judgment which has been reversed, and the rule governing the extent of his liability is that applicable to a trustee, which is, that he will· not be chargeable with more than he has received nor held responsible for losses that may arise, when he has acted in good faith, and with such common skill, prudence, and diligence as an ordinarily prudent man would have exercised in the conduct of his own business.

ID.—RESTITUTION OF CATTLE AND THEIR INCREASE—FINDINGS—EVIDENCE.—In an action to recover certain cattle and horses and their natural increase, and other personal property forming the equipment of a ranch, which had been taken from the possession of the plaintiff under a judgment which was afterwards reversed on appeal, the evidence is held sufficient to sustain findings to the effect that the defendant and those who held the ranch and the personal property under him had conducted the business of the ranch with care and diligence, with a certain exception, and that all of the property except so much thereof as had been properly used or lost by reason of circumstances for which the defendant was not responsible had been returned to the plaintiff.

ID.—TESTIMONY AS TO AGGREGATE RECEIPTS AND EXPENDITURES—CROSS-EXAMINATION.—The plaintiff in such an action cannot question the sufficiency of the evidence to sustain the findings merely because witnesses for the defendant had testified to the aggregate amounts of the receipts and expenditures of the ranch. If he had desired more specific information on these points he should have obtained it by cross-examination.

ID.—CONVEYANCE OF PROPERTY PRIOR TO REVERSAL OF JUDGMENT—PLAINTIFF CANNOT RECOVER BOTH PROPERTY AND PROCEEDS OF SALE. —If the defendant, who took possession of the property under the judgment, conveys it and the ranch before the reversal of the judgment on appeal, the plaintiff cannot, after the reversal, recover both the property and the consideration received by the defendant for the transfer.

ID.—UNNECESSARY FINDING OUTSIDE ISSUES.—In such an action, a finding as to the reasonable cost of management as well as the gross proceeds derived from the property by the defendant during the time he had possession is unnecessary when no such issue is raised by the pleadings.

EVIDENCE—ERRONEOUS EXCLUSION SUBSEQUENTLY CURED.—The exclusion of evidence at one stage of the case, even if erroneous, is harmless, if such evidence be subsequently admitted.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Variel & Hannon, for Appellant.

John D. Pope, for Respondent.

SLOSS, J.—In December, 1899, the district court of Maricopa County, territory of Arizona, in an action brought by John M. Ward, plaintiff herein, against Moses H. Sherman and one Hardenberg, entered its decree adjudging that Moses H. Sherman, one of the defendants in that action and the defendant herein, was the owner and entitled to the possession of the "Sun Flower Cattle Range," together with the cattle, horses, mules, wagons, harness, farm-tools, and machinery thereon. On January 10, 1900, the plaintiff, in accordance with said judgment and by reason thereof, surrendered to Sherman the possession of all the property described in said judgment, consisting of about twenty-four hundred head of horned cattle (the exact number not being susceptible of ascertainment), fifty-four head of horses and mules and certain other personal property, together with the range upon which the cattle and horses were grazing, comprising 462 acres of patented land owned by plaintiff and the surrounding public domain to an extent of ten or fifteen miles. Plaintiff appealed from said judgment to the supreme court of the territory of Arizona, which affirmed the judgment, whereupon plaintiff prosecuted an appeal from the judgment of the latter court to the supreme court of the United States, which court in January, 1904, made its judgment reversing the judgment of the supreme court of Arizona, and remanded the cause to that court with directions that it should reverse the judgment of the district court of Maricopa County and remand the cause thereto for further proceedings.

The present action is brought to recover the cattle and horses and their natural increase, alleged to be twenty per cent per annum, and the other personal property, or the value thereof, less the reasonable cost of managing the range and caring for the property, and for an accounting.

Of the answer filed by the defendant it will be sufficient, for the purposes of this appeal, to say that defendant alleged that, while he was in possession of the range, he managed it with care and economy, and that he necessarily expended in

CLV Cal.—19

caring for said range and in capturing, caring for, and mar-
keting said cattle more than all the money he did or could
receive for them.

The court found that the defendant took possession of the
property after the entry of the judgment in the district court
of Maricopa County and retained possession until some time
in the year 1902, when he transferred it to one Gunn, who
afterward transferred the same to one Smith. After the
reversal of the judgment in the supreme court of the United
States,—to wit, some time in the year 1904, Smith surren-
dered said ranch and the property thereon to plaintiff and
plaintiff resumed possession of the same. It is found that
during the time that Sherman, Gunn, and Smith were in pos-
session of the ranch they cared for the cattle, horses, mules,
and other property thereon and conducted the business of the
ranch in the usual and customary way and with ordinary care
and diligence, except that in the year 1900 Sherman paid
for removing 616 cattle from the range, one thousand dollars
more than it was reasonably worth to remove the same; that
during the time Sherman, Gunn, and Smith were in posses-
sion of the ranch they used a portion of the cattle and the
proceeds thereof in conducting and defraying the necessary
expenses of the business, but they did not use sufficient to
defray all of said expenses, and after deducting one thousand
dollars over-payment for removing cattle as above specified,
there is still a deficiency in the cattle used and the proceeds
of cattle sold to meet the necessary expenses of conducting
the business of said range. There is a further finding to the
effect that during the year 1900 the feed for the cattle on said
range was insufficient by reason of drought and the inroads
of large numbers of sheep which ate up the grass and feed,
and in the use of ordinary care and judgment defendant
removed and sold from said range from 600 to 800 head of
cattle which it would not have been necessary to remove and
sell except for the insufficiency of feed on the range during
said year 1900, but in removing said cattle and selling the
same defendant was not guilty of carelessness, negligence, or
mismanagement, but acted with reasonable care, judgment,
and discretion. Finally, it is found that "by reason of the
inroads of sheep and drought" the cattle on said range did not
increase between the time when defendant took possession of

said range and the time when the same was surrendered to plaintiff; and all the cattle, horses and other property that were on said range except such as had died or disappeared without fault of defendant or said Gunn or said Smith were surrendered to plaintiff with said range during the year 1905." Upon these findings the court concluded that plaintiff was not entitled to recover from the defendant and that the defendant should have judgment against the plaintiff for his costs. Judgment was entered accordingly and the plaintiff now appeals from that judgment and from the order denying his motion for a new trial.

There is no dispute between the parties as to the rules of law governing an action of this kind. Where a judgment or decree of an inferior court is reversed by a final judgment on appeal, a party is in general entitled to restitution of all the things lost by reason of the judgment in the lower court; and, accordingly, the courts will, where justice requires it, place him as nearly as may be in the condition in which he stood previously. (*Cowdery* v. *London etc. Bank,* 139 Cal. 298, [96 Am. St. Rep. 115, 73 Pac. 196]; Freeman on Judgments, sec. 482.) The restitution may be directed and provided for in the original action itself (Code Civ. Proc., sec. 957), or may, as here, be sought in a separate action instituted for that purpose. (*Cowdery* v. *London etc. Bank,* 139 Cal. 298, [96 Am. St. Rep. 115, 73 Pac. 196], and cases cited.) In such action the defendant must account for the property received under the judgment which has been reversed and the rule governing the extent of his liability is that applicable to a trustee, which, in 28 Am. & Eng. Ency. of Law, 2d ed., p. 1059, is stated as follows: "The general doctrine being that trustees ought to conduct the business of the trust in the same manner as an ordinarily prudent man of business would conduct his own, they will not be chargeable with more than they have received nor held responsible for losses that may arise, when they have acted in good faith and with common skill, prudence and diligence."

Under these rules it seems perfectly clear that if the findings of the court are sustained by the evidence the necessary conclusion is that drawn by the trial court,—namely, that the defendant was entitled to judgment in his favor. These findings are to the effect that the defendant and those who

held the ranch and the personal property under him conducted the business of the ranch with care and diligence, with the exception of one item in which they made an expenditure of one thousand dollars more than should have been made, but that the expense properly incurred by them in conducting said business was more than one thousand dollars in excess of the amount received by them as the proceeds of the ranch and of the cattle, and that all of the property, except so much thereof as had been properly used or lost by reason of circumstances for which the defendant and Gunn and Smith were not responsible, had been returned and surrendered to plaintiff.

It is strenuously insisted that the findings are not supported by the evidence, and in this connection the appellant points to the testimony of numerous witnesses to the effect that the rate of increase of cattle upon a range of this character amounts to about twenty per cent per annum, and that if this rate of increase had been maintained for the four years during which plaintiff was out of possession, the cattle returned to him would have exceeded by many hundreds the number actually surrendered. But as against this there is ample testimony to support the finding of the court that, during the years 1900 to 1904, drought and the inroads of sheep produced conditions so differing from those which had prevailed in preceding years that the range did not furnish sufficient food or water to support the number of cattle ranging thereon. This had a twofold result: The normal rate of increase was greatly diminished, and, in addition, it became necessary to reduce the number of cattle on the range in order that those remaining might subsist. There is no occasion to review the testimony of the different witnesses with reference to these points. It is enough to say that the record presents merely the familiar situation of a substantial conflict of evidence, and that in the face of such conflict this court cannot review the findings of the trial court.

Regarding the finding that the proceeds of sales of cattle by the defendant and Gunn and Smith were not sufficient to defray the necessary expenses of the business, it is true that the evidence was not as complete and detailed as it might have been. Witnesses did, however, testify to the aggregate amounts of the receipts and expenditures, and if plaintiff

had desired more specific information on these points he could readily have obtained it by cross-examination. (*Razzo* v. *Varni,* 81 Cal. 289, [22 Pac. 848]; *Cassin* v. *Cole,* 153 Cal. 677, [96 Pac. 277].)

The point is made that the defendant should have been charged with the sum of five thousand dollars received by him from Gunn when he turned over the range to the latter. The testimony in this connection was that Gunn paid Sherman five thousand dollars for the range, taking a quitclaim deed from him. This was no part of the proceeds for which Sherman was bound to account to plaintiff. Upon a sale by Sherman of the property received under the judgment which was afterwards reversed, the plaintiff might have had the right to pursue the property which was sold or to claim the proceeds of the sale, but obviously he could not demand both. Here the cattle sold to Gunn remained on the range and such of them as were still there after the final reversal of the Arizona judgment were returned to plaintiff. The trial throughout seems to have proceeded on the theory that Gunn and Smith were claiming under Sherman and that an accounting was to be made of their dealings with the cattle in precisely the same manner as of Sherman's dealings prior to the sale to Gunn. In this state of the case the five thousand dollars received by Sherman cannot be treated as a substitute for the cattle themselves but must be regarded as the purchase price of Sherman's own interest in the litigation. In quitclaiming the range and the cattle to Gunn he was in effect selling to the latter his chance of ultimately winning the litigation. If the judgment had been affirmed, Gunn would have held a good title; if reversed (as in fact it was), he would have paid five thousand dollars for property which did not belong to his vendor. In either event the plaintiff herein, pursuing the property itself and getting it, was in no way interested in this five thousand dollars.

It is further claimed that the court erred in failing to find upon the issue of the normal ratio of increase of stock during the years defendant had possession. A finding upon this issue could not have affected the result in view of the further findings of the court that, while defendant was out of possession, the cattle did not increase, and that plaintiff received all of them except such as were disposed of in the

proper management of the business or without the fault of the defendant.

The claim that the court should have found the reasonable cost of management as well as the gross proceeds derived from the property by Sherman during the years he had possession is answered by the statement that no such issue was presented by the pleadings.

It is urged that the court erred in sustaining an objection to a question asked the witness H. C. Ward as to what should be the natural annual increase of the cattle on the Sun Flower range. If the ruling was erroneous, any harmful effect which might have been produced thereby was obviated by the testimony of the witness, subsequently given, that no reason existed why with proper management of the range the rate of increase testified to (i. e., twenty per cent) should not have obtained during the seasons 1900, 1901, 1902, and 1903.

The judgment and order appealed from are affirmed.

Angellotti, J., Shaw, J., Melvin, J., and Henshaw, J., concurred.