**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PSM HOLDING CORP., a Corporation, *Plaintiff-Appellant*, | Nos. 15-55026 15-55941 |
| v. | D.C. No. CV 05-08891 MMM |
| NATIONAL FARM FINANCIAL CORPORATION, a Corporation; BUSINESS ALLIANCE INSURANCE COMPANY, a Corporation; LARRY P. CHAO, an Individual, *Defendants-Appellees.* | |

PSM HOLDING CORP., a
Corporation,
                *Plaintiff-Appellee*,

            v.

NATIONAL FARM FINANCIAL
CORPORATION, a Corporation;
BUSINESS ALLIANCE
INSURANCE COMPANY, a
Corporation; LARRY P. CHAO,
an Individual,
            *Defendants-Appellants.*

Nos.  15-55087
        15-55943
        15-56184


D.C. No.
CV 05-08891 MMM


OPINION

Appeals from the United States District Court
for the Central District of California
Valerie B. Fairbank and
Margaret M. Morrow, District Judges, Presiding[*]

Argued and Submitted December 6, 2016
Pasadena, California

Filed March 7, 2018

Before:  Stephen Reinhardt, A. Wallace Tashima,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Tashima

---

[*] Judge Fairbank presided over this case from its inception through July 2009.  On remand from the Ninth Circuit, the case was transferred to Judge Morrow, who presided over all subsequent proceedings.

## SUMMARY[**]

### Restitution / Rescission

The panel affirmed in part, reversed in part, and dismissed in part the district courts' judgment and orders concerning remedies in various appeals arising from claims for breach of contract and fraud.

The district court held that a judgment creditor, who seized a judgment debtor's company pursuant to a judgment that was reversed on appeal, could recover in restitution for losses suffered while it was in possession of the seized company. The district court denied the judgment creditor's request to rescind its quota share reinsurance agreement ("QSA") with Business Alliance Insurance Company.

The panel held that to the extent the district court's orders of July 26, 2010, and October 8, 2013, affirmed defendants' right to recover restitution, they were sound. In reviewing the district court's December 17, 2014 order, the panel held that the district court erred in allowing the judgment creditor to recover in restitution. The panel's conclusion rested on the California Supreme Court's decision in *Ward v. Sherman*, 100 P. 864 (Cal. 1909), wherein the court in an analogous situation, declined to award the judgment creditor an affirmative recovery to offset its losses. The panel's decision was bolstered by the plain reading of Restatement (First) of Restitution § 74 and Restatement (Third) of Restitution § 18,

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

which suggested that in similar cases, the right of restitution ran only to the judgment debtor.

The panel rejected the judgment creditor's challenges to the district court's October 8, 2013 order denying the judgment creditor's request for rescission of its QSA. Specifically, the panel held that the district court did not err by failing to consider California Civil Code § 1019, which concerns the removal of fixtures from leaseholds. Second, the district court thoroughly analyzed whether the QSA amounted to a necessary expense or, instead, an improvement. Finally, policy considerations did not favor the judgment creditor's position.

The panel reversed the district court's May 19, 2015 order granting in part and denying in part defendants' motion to recover post-appeal attorneys' fees. The panel held that the district court erred in awarding attorneys' fees under California Civil Code § 1717, while simultaneously concluding that the judgment creditor had fully satisfied the obligations stemming from the operative judgments. The panel dismissed, as moot, defendant's appeal of the district court's reduction of the lodestar fee amount.

Because the panel reversed the judgment creditor's restitution award, the panel vacated the district court's July 14, 2015 order denying defendants' motion to retax costs and remanded for reconsideration in light of changed circumstances.

The panel ordered that in each of the five appeals, each party should bear its own costs on appeal.

**COUNSEL**

Aluyah I. Imoisili (argued) and Linda Dakin-Grimm, Milbank Tweed Hadley & McCloy, Los Angeles, California, for Plaintiff-Appellant/Cross-Appellee.

Peder K. Batalden (argued) and Mitchell C. Tilner, Horvitz & Levy, Encino, California; Joseph W. Cotchett and Nancy L. Fineman, Cotchett Pitre & McCarthy, Burlingame, California; for Defendants-Appellees/Cross-Appellants.

**OPINION**

TASHIMA, Circuit Judge:

At the heart of this case lies a conceptually straightforward, but procedurally complex, question of first impression for our Circuit: Can a judgment creditor, who seizes a judgment debtor's company pursuant to a judgment that is subsequently reversed on appeal, recover in restitution for losses suffered while it was in possession of the seized company? The district court answered in the affirmative. In doing so, it awarded Plaintiff PSM Holding Corp. more than $1.1 million in restitution. Defendants now challenge this award.

All told, the parties have filed five appeals and cross-appeals, which were consolidated for oral argument and decision. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and dismiss in part.

## I.

## A. The Lawsuit and Trial

Prior to the instant lawsuit, Defendant-Appellee/Cross-Appellant National Farm Financial Corporation ("National Farm") owned Business Alliance Insurance Company ("BAIC"). Larry Chao, the president of National Farm, co-founded BAIC in the 1990s with his wife, Julie Chao. BAIC provided insurance to small businesses. BAIC had $14.2 million in net written premiums and $2.8 million in net income by 2005.

In early 2005, National Farm entered into negotiations to sell BAIC to Plaintiff-Appellant/Cross-Appellee PSM Holding Corporation ("PSM"). Ultimately, however, National Farm walked away from the deal. Thereafter, PSM sued National Farm, Larry Chao, and BAIC (collectively, "Defendants") alleging claims for breach of contract and fraud.

Following a trial, a jury found in favor of PSM and awarded it $40 million on its breach of contract claim and $3 million on its fraud claim. In post-trial proceedings, Judge Fairbank granted in part and denied in part Defendants' motion for judgment as a matter of law ("JMOL"). The motion was denied, with the exception that judgment was entered in favor of Defendants on the fraud claim, thereby reducing PSM's damages award to $40 million. Judge Fairbank also granted Defendants' motion to stay execution of the judgment pending appeal, conditioned on Defendants posting a $40 million bond. However, after Defendants failed to post the required bond and National Farm entered bankruptcy, PSM executed on the judgment. In October

2008, BAIC was transferred to PSM. At the time of transfer, BAIC had more than $30 million in assets.

After taking possession of BAIC, PSM took various steps to integrate BAIC into its existing business. For example, PSM and BAIC entered into an intercompany quota share reinsurance agreement (the "QSA"). The QSA provided that, for every insurance policy BAIC issued, PSM would receive 90 percent of the policy's insurance premiums in exchange for assuming 90 percent of the policy's risk of loss. BAIC would retain the remaining ten percent of the premiums and would continue to be responsible for ten percent of the policies' risk of loss. PSM also assumed control of 90 percent of BAIC's loss and loss expenses reserves, thereby rendering it responsible for 90 percent of BAIC's losses on policies written prior to October 21, 2008, as well as on future policies. Additionally, PSM and BAIC entered into an Intercompany Service Agreement ("ISA"), under which PSM would provide to BAIC certain executive, administrative, and other services.

## B.  The Judgment is Reversed

On June 18, 2009, the Ninth Circuit reversed Judge Fairbank's partial denial of Defendants' JMOL motion. The Ninth Circuit held that "[t]he plain terms of the agreement dictate that no contract was formed because the signature lines for National Farm; Larry Chao, as an individual; and Julie Chao, as an individual, were left blank. As a result, none of the parties could be liable under its terms." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 339 F. App'x 693, 694 (9th Cir. 2009). The case was remanded to the district court.

## C.  Post-Remand Proceedings

### 1.   July 26, 2010, Order on Restitution

On remand from the Ninth Circuit, it was undisputed that PSM should pay restitution to Defendants.   At issue, however, was the appropriate amount.

On July 26, 2010, the district court granted in part and denied in part Defendants' motion for restitution and attorney's fees.   Although Defendants' motion opposed a return of BAIC to National Farm and, instead, sought a restitution award in the amount of $59.6 million, the district court ordered "[r]estitution in the form of the return of BAIC's shares to [D]efendants."

The district court's decision relied heavily on Restatement (First) of Restitution § 74, which provides that:

> A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess.

Restatement (First) of Restitution § 74 (Am. Law Inst. 1937). In such situations, comment e to § 74 provides, "the judgment debtor is entitled to specific restitution, together with the value of [the property's] use in the meantime, diminished by expenses necessarily incurred in the protection of the property

and the payment of taxes and liens, but not including the expense of improvements." *Id.* at § 74, cmt. e.

According to the district court, this rule is consistent with a similar principle set forth in Restatement (Third) of Restitution and Unjust Enrichment § 18 (Am. Law. Inst. 2011):

> A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment.

Finally, the court supported its decision by relying on several state court decisions – from California and elsewhere – that confronted similar issues, including *Stockton Theatres, Inc. v. Palermo*, 264 P.2d 74 (Cal. Dist. Ct. App. 1953), *Erickson v. Boothe*, 274 P.2d 460 (Cal. Dist. Ct. App. 1954), and *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060 (Del. 1988).

Based on these authorities, the district court concluded that "Defendants are entitled to specific restitution of the BAIC shares."[1]  Additionally, the district court determined that Defendants were "entitled to an accounting of the profits earned while PSM held BAIC, 'diminished by expenses necessarily incurred in the protection of the property and the payment of taxes and liens.'"  (Quoting Restatement (First) of Restitution, § 74 cmt. e (Am. Law Inst. 1937).) Accordingly, the district court ordered "an accounting of the

---

[1] PSM returned the BAIC shares to Defendants in early 2011.

profits PSM generated through its ownership of [the BAIC] shares."[2]

## 2. October 8, 2013, Order on Accounting and Rescission of QSA

Post remand, Defendants filed a motion for an award of PSM's profits. Defendants sought $14 million in profits. PSM opposed the motion, arguing that it actually suffered a $1.5 million loss as a result of its temporary possession and control of BAIC. Additionally, PSM sought to rescind the QSA. The district court determined that expert testimony was required in order to resolve Defendants' motion for profits and PSM's request for rescission. Accordingly, it appointed two experts: (1) Debra J. Roberts, who would consider the QSA issue; and (2) Timothy H. Hart, a forensic accountant, who would consider the question of profits. After each expert filed her/his report, the district court ruled.

On the question of rescission, the district court denied PSM's request, relying on the following illustration:

> A obtains judgment in ejectment against B and is put in possession of Blackacre. After knowledge that an appeal has been taken, A makes improvements thereon to the amount of $1000, at an expense of $100 repairs a roof which otherwise would have leaked, and pays taxes thereon to the amount of $300. He

---

[2] In addition to ordering a return of the BAIC shares and an accounting of profits, the district court awarded Defendants $2,224,220.76 in attorneys' fees and $53,984.99 in costs. These awards of fees and costs are *not* at issue on this appeal.

> remains on the land for two years, at the end
> of which time the judgment is reversed. B is
> entitled to restitution of the land and to the
> reasonable rental value of the land during the
> two years, less the amount expended by A for
> the necessary repairs and for the payment of
> taxes; ordinarily [diminishment in] restitution
> for the value of the improvements would not
> be granted.

Restatement (First) of Restitution § 74 cmt. f, illust. 14 (Am. Law Inst. 1937). This rule, the district court reasoned, is consistent with the well-established proposition that "the distinction between 'repairs and maintenance' and 'improvements' can be characterized 'as the difference between 'keeping' and 'putting' [an] . . . asset in good condition." (Quoting *Moss v. Commissioner*, 831 F.2d 833, 835 (9th Cir. 1987).)

Under this legal framework, the district court concluded that "[t]he factual record supports the conclusion that the reinsurance agreement was an improvement rather than a necessary cost of protecting BAIC." It reasoned that "[t]he reinsurance agreement increased the amount of reinsurance BAIC had prior to the time PSM acquired it" and, consequently, "the agreement added to BAIC's value by reducing the amount of risk it faced." And, there is nothing in the record to suggest that "absent replacement of the existing excess of loss and catastrophe insurance with the [QSA], BAIC would have been unable to function as an insurance company." Similarly, the district court found no evidence suggesting that "there was an imminent danger that the California Department of Insurance would take regulatory

action against BAIC that would have precluded it from writing insurance business."

Because, according to the district court, the QSA was "better characterized as an 'improvement' [rather] than an expense necessary to protect BAIC," the district court concluded that "rescission of the agreement [was] not warranted."

With respect to profits, the district court made the following findings: (1) Defendants were entitled to recover $203,532 in "synergy profits" from PSM; (2) there was no evidence to support Defendants recovery of "future profits"; (3) Defendants were entitled to recover a $30,973 tax benefit previously received by PSM due to its ownership of BAIC; (4) Defendants were not entitled to any recovery as a result of PSM's liquidation of PSM's stock portfolio; (5) PSM was not entitled to an additional management fee beyond what had already been paid directly by BAIC; (6) Defendants were entitled to recover $254,524 in improperly charged transition costs; (7) PSM was entitled to "an adjustment of the restitution award" of $332,190 to cover "operating expenses associated with BAIC while it ran the company"; (8) PSM was entitled to a credit of $557,402 in "ceded premiums," i.e., premiums paid on reinsurance contracts that BAIC entered into prior to PSM's ownership; and (9) PSM could "offset" any restitution payment to Defendants by $700,000 to account for PSM's assumption of a loan made by BAIC to National Farm.

The district court then ordered the parties to jointly "prepare an accounting of the amounts owed [Defendants] and the amounts PSM [was] entitled to deduct." The court

added that it would "enter judgment in favor of whichever party is owed money pursuant to the accounting."

### 3.   December 17, 2014, Order on Restitution of Profits

The parties – unable to reach agreement on the amounts owed – each filed a proposed judgment.  The parties agreed that, based on the district court's prior October 8, 2013, order, PSM was to be allotted $1,100,563 in net principal.  That is, per the October 8 order, PSM's offsets and credits exceeded the Defendants' recovery of profits and benefits by just over $1.1 million.  Nonetheless, the parties disputed what should happen next.  For its part, PSM sought to recover $1,100,563 in net principal, net prejudgment interest at a rate of $211 per day until the entry of judgment, and undetermined costs and attorneys' fees.  In contrast, Defendants requested that the district court award nothing to PSM and award unstated costs to Defendants.

The crux of Defendants' position was that the district court should award nothing to PSM because "[b]ased upon the rules of restitution, which are grounded on the principles of equity, it would be inequitable to award PSM monies, especially since it operated BAIC at a loss during its operations."

In its December 17, 2014, order, the district court rejected Defendants' arguments and awarded $1,100,563 to PSM.  In support of its decision, the court articulated the following "fundamental rule" of restitution:  "the goal of restitution is 'to place the parties in as favorable a position as they could have been in had the judgments not be enforced pending appeal.'"  (Citing *Gunderson v. Wall*, 126 Cal. Rptr. 3d 880, 883 (Ct. App. 2011).)  Moreover, the district court continued,

"[a]bsent evidence of bad faith, even assuming PSM operated BAIC at a loss, equity does not require that PSM be held responsible for the loss."  (Citing Restatement (First) of Restitution § 74, cmt. f. (Am. Law Inst. 1937).)

In the same order, the district court considered PSM's request for prejudgment interest, pursuant to California Civil Code § 3287(a).  As a preliminary matter, the district court emphasized that, under § 3287(a), "[e]very person who is entitled to recover damages *certain, or capable of being made certain by calculation* . . . is entitled also to recover interest thereon . . . ." (Quoting Cal. Civil Code § 3287(a) (emphasis and alterations in original).)  Moreover, the district court added, "an accounting action is prima facie evidence [that] a claim is uncertain." (Quoting *Chesapeake Indus., Inc. v. Togova Enters., Inc.*, 197 Cal. Rptr. 348, 353 (Ct. App. 1983).)  Then, after surveying several California appellate court decisions which stand for the same proposition, the district court reasoned that "[h]ere, the issue of restitution was complex, and necessitated that the court appoint business valuation and reinsurance experts," and that "[t]here were numerous discrete questions that the court had to resolve in order to determine the amount of restitution."  Based on these findings, the district court declined to award prejudgment interest.

Concurrently with its December 17 order, the district court entered a final judgment, in which it ordered that: (1) based on the Ninth Circuit's reversal, PSM would "take nothing by way of its complaint"; (2) Defendants would recover $2,224,220.76 in attorneys' fees and $53,984.99 in costs stemming from pre-reversal proceedings; (3) PSM

would recover $1,100,563 from Defendants as restitution; and (4) the action would be dismissed.**³**

The parties cross-appealed from the December 17 order.

### 4. May 19, 2015, Order on Post-Reversal Attorneys' Fees and Costs

On December 31, 2014, Defendants moved for post-reversal attorneys' fees. Defendants sought fees under California Code of Civil Procedure § 685.040 or, alternatively, under California Civil Code § 1717. PSM opposed the motion. The district court first considered whether Defendants could recover fees under § 685.040, which provides:

> The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law. Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5.

---

**³** The district court also stated that Defendants may file subsequent or additional attorneys' fees motions, in accordance with Federal Rule of Civil Procedure 54(d).

In turn, California Code of Civil Procedure § 1033.5(a)(10)(A) provides that collectible costs include "attorneys' fees[] when authorized by . . . [c]ontract." The district court further noted that "[a] motion for post-judgment costs, including attorneys' fees, under § 685.040 must 'be made before the judgment is satisfied in full, but not later than two years after the costs have been incurred.'" (Quoting Cal. Code. Civ. Proc. § 685.080(a).)

The district court interpreted Defendants' position to be that the "judgment" at issue was either (1) the Ninth Circuit's mandate reversing Judge Fairbank's judgment in favor of PSM on the breach of contract claim, or (2) the district court's December 17, 2014, judgment.  Under either interpretation, the district court found, Defendants cannot prevail.

According to the district court, the Ninth Circuit's mandate could not serve as the operative judgment because it did not itself include an award of attorneys' fees, and, as a result, § 685.040 has no applicability.  Similarly, the district court reasoned, the December 17, 2014, judgment likewise fails to provide a basis for recovery of post-reversal fees because the fees requested by Defendants were incurred *prior to* entry of that judgment.  Thus, "it is unclear how defendants could have incurred fees 'enforcing' that judgment." Additionally, the district court added that PSM satisfied each of these judgments prior to the filing of Defendants' motion, a fact that independently precluded recovery under § 685.040.

Next, the district court considered Defendants' alternative motion for fees pursuant to § 1717, which provides as follows:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a).

The district court began its analysis by observing that PSM's breach of contract claim was "indisputably" an action "on the contract," as required by § 1717. Moreover, the district court reasoned, "the restitution motions . . . are 'part of [the] defense' of the contractual claim." (Alterations in original.) (Quoting *Anchor Pacifica Mgmt. Co. v. Green*, No. B253529, 2014 WL 3841227, at *1 (Cal. Ct. App. Aug. 5, 2014) (unpublished).) That is, according to the district court, "Defendants here lost BAIC after Judge Fairbank entered judgment and PSM executed on the judgment; their post-appeal restitution motions sought to recover the company and profits/benefits they were denied as a result of the erroneous judgment." Because the restitution motions were not distinct or separate from the underlying breach of contract action, the motions were, the district court concluded, "on the contract" for purposes of § 1717.

Having determined Defendants' post-reversal motions were "on the contract," the district court considered whether Defendants were the prevailing party, as required for recovery under § 1717. Rejecting PSM's arguments to the

contrary, the district court emphasized that Defendants "achieved total victory on the claims it asserted in its complaint and their counterclaims when the Ninth Circuit reversed the $40 million judgment entered in favor of PSM and held that PSM had no binding purchase agreement with defendants." In light of this "total victory," the district court concluded that "Defendants' relative success in the post-appeal restitution proceedings for which they now seek fees is more properly considered in determining a reasonable lodestar amount."

The district court next calculated the lodestar fee of $438,175. It reduced this amount by 30 percent "to reflect the defendants' limited success on the post-appeal restitution motions." That is, while Defendants succeeded in securing the return of BAIC from PSM, "the court declined to award $59.6 million in restitution and denied their request for profits in its entirety." Accordingly, the district court awarded Defendants post-reversal attorneys' fees in the amount of $306,722.50.

The parties filed cross-appeals from the May 19, 2015, order on attorneys' fees.

### 5. July 14, 2015, Order Denying Defendants' Motion to Retax Costs

On December 31, 2014, Defendants filed an application to the Clerk to tax costs in the amount of $155,085.13. The Clerk awarded Defendants $3,662.22 relating to certain depositions, but refused to tax $455 in filing fees and $150,967.22 in costs attributable to the court-appointed experts. Defendants then moved to retax costs.

In considering Defendants' motion to retax costs, the district court began by acknowledging that the Ninth Circuit has construed Federal Rule of Civil Procedure 54(d)(1) as creating a "presumption in favor of awarding costs to the prevailing party, while at the same time granting a district court the discretion to decline to do so." (Citing *Berkla v. Corel Corp.*, 302 F.3d 909, 921 (9th Cir. 2002).) However, the district court continued, as part of its discretion, a court may deny costs for several reasons, including, specifically, "whether the prevailing party's recovery was nominal or partial." (Citing *Quan v. Computer Scis. Corp.*, 623 F.3d 870, 888–89 (9th Cir. 2010).)

In light of this discretion, as well as its prior findings of limited success, the district court concluded that "it is appropriate to deny certain cost[s] for which defendants seek reimbursement despite their 'prevailing party' status." Thus, the court held:

> [B]ased on defendants' limited success and partial recovery, the benefit to both parties of the court-appointed experts' reports, and the necessity of retaining such experts to assist in analyzing the complex issues raised by the post-appeal restitution proceedings, the court exercises its discretion to deny defendants' request to tax their share of the court-appointed experts' fees.

Defendants appealed the district court's July 14, 2015, order denying their motion to retax certain costs.

## II.

We take the questions raised in these five appeals *seriatim*.

## A.  The award of "restitution" to PSM  (No. 15-55087)

### 1.  Standard of Review

"We review a district court's interpretation of state law de novo."  *Ariz. Elec. Power Co-Op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995) (citation omitted).  "When interpreting state law, federal courts are bound by decisions of the state's highest court."  *Id.* (citation omitted).  "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."  *Id.* (quoting *Sec. Pac. Nat'l Bank v. Kirkland (In re Kirkland)*, 915 F.2d 1236, 1239 (9th Cir. 1990)).

### 2   Analysis

To the extent the district court's orders of July 26, 2010, and October 8, 2013, affirmed *Defendants'* right to recover restitution, they are sound.  *See Schubert v. Bates*, 185 P.2d 793, 791 (Cal. 1947) ("A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside . . . ." (quoting Restatement (First) of Restitution § 74 (Am. Law Inst. 1937) (internal quotation marks omitted))).  It is the district court's subsequent order of December 17, 2014, that broke new ground.  There, the district court awarded PSM, *the judgment*

*creditor*, restitution.    This presents a question of first impression: can a judgment creditor – who seizes a judgment debtor's company pursuant to a judgment that is then reversed – recover in restitution for losses suffered while it possessed the seized company?  The district court answered this question in the affirmative, thereby awarding PSM more than $1.1 million in restitution.  Perhaps because of its doctrinal novelty, neither the parties' briefing on appeal nor the district court's order cites controlling authority to support this award.  Instead, the parties rely on two provisions in the Restatements of Restitution, § 908 of the California Code of Civil Procedure, and several California state court decisions.

### a.  Restatements of Restitution

The Restatement (First) of Restitution was formally adopted in 1936.  Section 74 thereof provides that:

> A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final.

Two comments to § 74 warrant mention.  Comment e states:

> If the property of the judgment debtor was awarded to the judgment creditor . . . [then] the judgment debtor is entitled to specific restitution, together with the value of its use in the meantime, diminished by expenses necessarily incurred in the protection of the

> property and the payment of taxes and liens, but not including the expense of improvements . . . .

Separately, Comment f provides:

> The judgment creditor is not liable for losses not caused by his mismanagement of the property . . . except where the action was brought in bad faith or where there was a sale on execution and the sale was improperly conducted . . . .

Finally, Illustration 15 to Comment f describes a situation where, after a judgment creditor takes possession of certain real property, a fire destroys valuable timber located thereupon. *See* Restatement (First) of Restitution § 74 cmt. f illus. 15 (Am. Law Inst. 1937). The Illustration makes clear that while the judgment debtor is entitled to restitution of the real property, he is not entitled to compensation for the timber.

A plain reading of § 74 and the comments thereto undermines the award of restitution to PSM. Section 74 provides a right of restitution to a particularly described party: namely, the "person who has conferred a benefit upon another in compliance with a judgment." *Id.* at § 74. In this case, that refers to the Defendants, not to PSM. The comments to § 74 affirm this same principle. Comment e expressly states that "the *judgment debtor* is entitled to specific restitution." *Id.* at § 74 cmt. e (emphasis added). Likewise, Comment f – in limiting what can be recovered in restitution – speaks in terms of the *judgment creditor's* liability or lack of liability.

The California Supreme Court has not spoken directly to the question presented in this appeal.  On two occasions, however, it cited § 74 approvingly.  *See, e.g.*, *Sullivan v. Wellborn*, 195 P.2d 787, 789–91 (Cal. 1948) (comparing defendant to a judgment creditor and denying his request to reduce money owed to plaintiff because the costs incurred by defendant were not necessary to preserve  wrongfully possessed property); *Schubert v. Bates*, 185 P.2d 793, 796 (Cal. 1947) (quoting § 74 in an order affirming a restitution award to Bates, who was forced to leave her home pursuant to an erroneous judgment that was subsequently reversed). These cases suggest that the California Supreme Court would likely look to § 74 to resolve the instant appeal.

A similar provision is included in Restatement (Third) of Restitution and Unjust Enrichment, formally adopted in 2011. Section 18 thereof provides that:

> A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment.

Comment e to § 18 confirms that "[t]he rule of this section recognizes a judgment debtor's entitlement to restitution only 'as necessary to avoid unjust enrichment.'"  Restatement (Third) of Restitution § 18 cmt. e (Am. Law Inst. 2011). Both this rule and the comment accord with the plain reading of § 74. Specifically, § 18's use of the phrase "disadvantaged party," when read in context, can be interpreted only as a reference to the party who is deprived of property by court order – in other words, the judgment debtor. *Id.* at § 18.

PSM's argument to the contrary, that the phrase "disadvantaged party" should be read to invoke either the judgment creditor or the judgment debtor, is unpersuasive. But, even if we accept PSM's position and assume, without deciding, that § 18 is ambiguous, Comment e clarifies and confirms that § 18 "recognizes a *judgment debtor's* entitlement to restitution," at least to the extent such restitution is required to avoid unjust enrichment. *Id.* at § 18 cmt. e (emphasis added).

In sum, a plain reading of § 74 of the Restatement (First) of Restitution and § 18 of the Restatement (Third) of Restitution stands at odds with the district court's December 17 order. However, because these authorities are, at most, merely persuasive, our analysis must also take into account other potential sources of law.

### b.  California Code of Civil Procedure § 908

California Code of Civil Procedure § 908 provides, in part, as follows:

> When the judgment or order is reversed or modified, the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the judgment or order. In doing so, the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment . . . .

Section 908 thus identifies the *purpose* of awarding restitution in cases like the one at hand:  to restore, in so far

as is possible, the parties involved to the positions they occupied prior to enforcement of the judgment. Here, then, § 908 instructs that the purpose of restitution should be to return PSM and Defendants to their respective positions *ex ante* PSM's execution of the judgment and its taking possession of BAIC.

The district court's December 17 order describes the "fundamental rule" of restitution as "plac[ing] the parties in as favorable a position as they could have been in had the judgments not been enforced pending appeal." (Citing *Gunderson*, 126 Cal. Rptr. 3d at 883.) And, applying this rule, the district court concluded that if PSM was not permitted to recoup the expenses it incurred while it operated BAIC, then Defendants would be placed in a position more favorable than the one they would have occupied had PSM never executed on the judgment.

At first glance, the district court's application of the rule embodied in § 908 may appear sound. But on careful reflection, it is not. To begin with, the district court's approach is arguably inconsistent with § 908's plain language, which provides that a restitution award should include "all property and rights *lost by the erroneous judgment*." Cal. Code Civ. Proc. § 908 (emphasis added). Here, it is incorrect to say that PSM suffered losses as a direct consequence of the erroneous judgment. Rather, these losses resulted from PSM's own, affirmative decision to execute on the judgment while Defendants' appeal remained pending. Relatedly, the district court's order ignores that PSM assumed some amount of risk when it opted to execute on the judgment while an appeal was pending. *See, e.g.*, *Strong v. Laubach*, 443 F.3d 1297, 1300 (10th Cir. 2006) ("By executing on their judgment and receiving the garnished

funds during the pendency of the appeal, the Strongs assumed the risk that they might have to repay the money if Laubach prevailed on appeal.").

### c. California State Court Decisions

### i. California Supreme Court

More than one hundred years ago, the California Supreme Court in *Ward v. Sherman*, 100 P. 864 (Cal. 1909), considered a case with facts analogous to the case at bench. In *Ward*, the plaintiff surrendered, pursuant to a judgment of the Maricopa County Court, of the Territory of Arizona, possession of the "Sun Flower cattle range," together with its animals and equipment, to defendants Sherman and Hardenberg.[4]  *Id.* at 864–65.   On appeal, the Arizona Territorial Supreme Court affirmed, but the U.S. Supreme Court reversed. *Id.* at 865. Thereafter, the plaintiff, who had already retaken possession of the property, brought an action "to recover the cattle and horses and their natural increase . . . less the reasonable cost of managing the range and caring for the property, and for an accounting." *Id.* In considering plaintiff's request for restitution, the California Supreme Court stated the operative rule of law:

> Where a judgment or decree of an inferior court is reversed by a final judgment on appeal, a party is in general entitled to restitution of all the things lost by reason of the judgment in the lower court; and, accordingly, the courts will, where justice

---

[4] Thus, unlike in the usual case, the plaintiff in *Ward* was the judgment debtor.

requires it, place him as nearly as may be in the condition in which he stood previously.

*Id.* (citations omitted).

Moreover, the court continued, where a party seeks to recover under these circumstances:

[T]he defendant must account for the property received under the judgment which has been reversed, and the rule governing the extent of his liability is that applicable to a trustee, which [may be] stated as follows: "The general doctrine being that trustees ought to conduct the business of the trust on the same manner as an ordinarily prudent man of business would conduct his own, they will not be chargeable with more than they have received nor held responsible for losses that may arise, when they have acted in good faith and with common skill, prudence and diligence."

*Id.* at 865–66 (quoting 28 Am. & Eng. Ency. of Law 1059 (2d ed. 1908).

Applying these principles to the case before it, the California Supreme Court began by noting that "the defendant and those who held the ranch and the personal property under him conducted the business of the ranch with care and diligence." *Id.* at 866. That is to say, there was no bad faith or mismanagement. Nonetheless, the court determined, "the expense properly incurred by them in conducting said business was more than $1,000 in excess of

the amount received by them as the proceeds of the ranch and of the cattle." *Id.* Accordingly, the California Supreme Court affirmed the lower court order, which had concluded that "plaintiff was not entitled to recover from the defendant, and that the defendant should have judgment against the plaintiff for his costs." *Id.* at 865, 867.

Thus, the California Supreme Court in *Ward* confronted a circumstance analogous to the one we face today:  one wherein a judgment creditor (who, in that case, was the defendant) took possession of a property pursuant to an erroneous judgment, managed the property responsibly and in good faith, but nevertheless incurred losses that exceeded any resulting profits.

The relevance of *Ward* lies as much in what the California Supreme Court did *not* do, as well as with what it did do. That is, the court did *not* award the judgment creditor-defendant an affirmative recovery to offset the losses suffered while it managed the ranch, despite of the fact that the court made a finding that such expenses exceeded any potential profits or proceeds that the defendant may have earned. Rather than allow defendant an affirmative recovery, the court simply denied plaintiff's request for restitution and awarded defendant the costs of litigation. *Id*. at 865, 867.

### ii.  California Courts of Appeal

Although the district court acknowledged *Ward* in its December 17, 2014, order, it relied more extensively on two California Courts of Appeal decisions: *Gunderson*, 126 Cal. Rptr. 3d 880, and *Stockton Theatres, Inc. v. Palermo*, 264 P.2d 74 (Cal. Dist. Ct. App. 1953).

This is itself arguably problematic: in diversity cases, federal courts should consider decisions of the California Courts of Appeal only "where the Supreme Court of California has not spoken on the question" and where there is no "convincing evidence that the highest court of the state would decide [the issue] differently." *Cmty. Nat'l Bank v. Fid. & Deposit Co. of Md.*, 563 F.2d 1319, 1321 n.1 (9th Cir. 1977) (internal quotation marks and citations omitted). Here, the California Supreme Court's decision in *Ward* may, itself, well be such "convincing evidence."

Even setting this issue aside, however, the district court's December 17, order remains problematic. This is because neither *Gunderson* nor *Stockton Theatres* provides the legal support necessary to sustain PSM's recovery in restitution.

In *Gunderson*, a jury awarded the plaintiff compensatory and punitive damages and the defendants appealed. *See* 126 Cal. Rptr. 3d. at 881.While the appeal was pending, the plaintiff executed on the judgment. *Id.* at 881–82. The court of appeal affirmed the compensatory damages, but reversed the award of punitive damages. *Id.* at 882. The plaintiff voluntarily returned the punitive damages, but declined to pay the interest that had accrued during the pendency of the appeal. *Id.* The defendant moved for restitution of the interest , which the plaintiff opposed on the ground that he had incurred $100,000 in unnecessary costs as a result of the defendant's misconduct. *Id.*

The court of appeal began its analysis by setting forth the relevant legal principles. "A person whose property has been taken under a judgment 'is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable.'" *Id.* at 883 (quoting *Stockton Theatres*,

264 P.2d at 77).  The court relied on California Code of Civil Procedure § 908 for the proposition that

> [U]pon the reversal or modification of a judgment, "the reviewing court may direct that the parties be returned so far as possible to the position they occupied before the enforcement of or execution on the judgment or order.  In doing so, the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order."

*Id.* at 883.  Thus, the court summarized, "[t]he fundamental rule guiding the court in such proceeding[s] is, so far as possible, to place the parties in as favorable a position as they could have been in had the judgments not been enforced pending appeal."  *Id.* (alterations in original) (quoting *Stockton Theaters*, 264 P.2d at 85).

Applying these principles, the court reasoned that because Wall's "prolonged evasive misconduct" caused Gunderson to incur additional costs when  executing the judgment, returning the parties to their original positions did not require restitution of interest.  *Id.* at 885 ("By permitting Gunderson to retain whatever interest had accrued on the reversed portion of his award, the trial court was, in effect, attempting to return him to the position he held prior to the execution of the judgment.").  On this basis the court affirmed the trial court's denial of Wall's motion for restitution.  *Id.*

The district court's reliance on *Gunderson* is unpersuasive for three reasons.  First, *Gunderson* does not go as far as the district court's order:  that is, the *Gunderson* court did not

require Wall (the judgment debtor) to affirmatively make a payment in restitution to Gunderson (the judgment creditor).[5] Yet this is precisely the legally dubious step at issue on this appeal. Second, *Gunderson* involved a situation wherein the judgment debtor's recovery was limited because of the debtor's own misconduct. No such misconduct has been ascribed to Defendants here. Finally, even if the district court relied on *Gunderson* only for the general proposition that restitution in this type of case aims to "return[] the parties to their original positions," it fails to persuade. This is because, on the record here, there is insufficient evidence to conclude that Defendants would have incurred the same losses had their possession of BAIC not been interrupted.

The district court's reliance on *Stockton Theatres* is unconvincing for the same reasons. There, Emil Palermo, the owner and lessor of a theater, sought a declaratory judgment against Stockton Theatres Inc., the lessee of the theater, to void the lease between them. *Stockton Theatres*, 264 P.2d at 76–77. The trial court found in favor of Palermo and voided the lease. *Id.* at 77. Thereafter, Palermo initiated and prevailed in an unlawful detainer action against Stockton Theatres. Palermo retook possession of the property for several years. *Id.* On appeal, both judgments were reversed. *Id.* Consequently, the lease was deemed valid and Palermo returned possession of the theater back to Stockton Theatres. *Id.* Viewing this victory as incomplete, Stockton Theatres

---

[5] If it had, then the court would have needed to calculate the difference between the interest received by Gunderson while he possessed the $800,000 pending appeal, and the additional costs incurred by him as a result of Wall's misconduct. The court did not do so, opting instead simply to do rough justice by zeroing out Wall's restitution award. To be analogous to the instant case, the court would have had to order Wall (the judgment debtor) to affirmatively pay Gunderson (the judgment creditor).

then sought to recover, in restitution, the income Palermo had earned from operating the theater business during the period the appeal was pending. *Id.* After an accounting, the trial court awarded Stockton Theatres $13,658.75 in lost income. *Id.*

The court of appeal began by reiterating the familiar principles of restitution in cases where a judgment is subsequently reversed. *Id.* at 77–78 (citing Restatement (First) of Restitution § 74 (Am. Law Inst. 1937) and *Ward*). In denying Palermo's appeal, the court reasoned that Palermo "knew those judgments were not final and that the basic one had already been made the subject of an appeal." *Id.* at 79. Thus, he knew that "if the appeal was successful he would be subject to a demand by the theatre company that he account for all that he had received through his enforcement of the questioned judgments." *Id.* "To make out the right of restitution," the court of appeal concluded, "it was only necessary for the theatre company to show . . . that things of value had been taken from it through the judgments appealed from and through Palermo's enforcement thereof and had passed into Palermo's hands and that thereafter the judgments had been reversed." *Id.* Once established, "[i]mmediately the right of restitution arose and it was the duty of the court to place the parties back as nearly as could be in the situation in which each had been when the erroneous judgments were rendered." *Id.*

Here, too, the district court's reliance on *Stockton Theatres* is unpersuasive. Unlike the district court's December 17 order, the court in *Stockton Theatres* did not require Stockton Theatres, the judgment debtor in that case, to make an affirmatively pay in restitution to Palermo, the judgment creditor. In fact, imagining such a result confirms

the district court's error in our case: if Palermo had operated the theater at a significant loss, no one would expect Stockton Theatres to make him whole under a theory of restitution – doing so would be self-evidently unfair.

### d. Conclusion

Reviewing the December 17 order de novo, as we must here do, we conclude that the district court erred in allowing PSM – the judgment creditor – to recover in restitution. Our conclusion rests on the California Supreme Court's decision in *Ward*, wherein the court, confronted with an analogous circumstance, declined to award the judgment creditor an affirmative recovery to offset its losses. Our holding is bolstered by the plain reading of Restatement (First) of Restitution § 74 and Restatement (Third) of Restitution § 18, both of which suggest that, in cases such as the one before us, the right of restitution runs only to the judgment debtor. Accordingly, for the reasons set forth, we reverse the district court's award of restitution to PSM.[6]

## B. Rescission of PSM's QSA with BAIC (No. 15-55026)

### 1. Standard of Review

The applicable standard of review for this part is the standard set forth in Part II.A.1, *supra.*

---

[6] Our conclusion with respect to restitution also renders moot PSM's appeal of the district court's order denying PSM prejudgment interest. No. 15-55026. Because there is no award, the question of whether PSM was entitled to receive prejudgment interest on that award is moot.

**2. Analysis**

The district court's October 8, 2013, order denied PSM's request to rescind its QSA with BAIC. That decision relied heavily on Comment e to § 74 of the Restatement (First) of Restitution, which provides, in relevant part, that a judgment creditor may "diminish[]" a judgment debtor's recovery by "expenses necessarily incurred" but not by "the expenses of improvements." The district court found that "[t]he factual record supports the conclusion that the reinsurance agreement was an improvement rather than a necessary cost of protecting BAIC," and, as a result, that rescission thereof would be improper.

PSM raises three arguments on appeal. First, PSM contends that the district court erred by not applying, or at least considering, California Civil Code § 1019, which concerns the removal of fixtures from leaseholds. Second, PSM argues that the district court compounded this error by misapplying § 908, which compels a court to return the parties to the positions they occupied prior to enforcement of the erroneous judgment. Finally, PSM argues that policy considerations favor its position, particularly because, absent reversal, "judgment creditors would face an insurmountable dilemma."

PSM's arguments are unpersuasive. First, § 1019 provides:

> A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without

> injury to the premises, unless the thing has, by
> the manner in which it is affixed, become an
> integral part of the premises.

Cal. Civ. Code § 1019.  The language of § 1019 – in particular, its reference to "tenants" and "premises" – has little relevance to the instant case.  PSM was never a "tenant" and never possessed a "premises" on which anything could be "affixed."  Therefore, PSM's argument that the district court abused its discretion by failing to consider § 1019 is without merit.[7]

Second, PSM's argument that the district court erred in its application of California Code of Civil Procedure § 908 is similarly unconvincing.  Relying on *Stockton Theatres*, PSM argues that it should not be held liable for expenses that were necessarily incurred to preserve BAIC's value, and that the district court's "mechanical removal" of these costs was error.  Contrary to PSM's argument, however, the district court thoroughly analyzed whether the QSA amounted to a necessary expense or, instead, an improvement.

The district court reasoned that the applicable test for distinguishing between "repairs and maintenance" and "improvements" is whether "the improvements were made to 'put' the particular capital asset in efficient operating condition . . . [or] if . . . they were made merely to 'keep' the asset in efficient operating condition[.]"  (Quoting *Moss*, 831 F.2d at 835.)  Applying this standard, the district court

---

[7] Moreover, PSM's reliance on *Central Pacific Supply Corp. v. Breton*, 937 F.2d 611, 1991 WL 134448 (9th Cir. 1991) (unpublished), is likewise unavailing.  *Central Pacific* involved a leasehold of real property, *see id.* at *1, which is far afield from our facts.

concluded from the record evidence that PSM's decision to enter into the QSA "*added* to BAIC's value by reducing the amount of risk it faced." (Emphasis added.) Because the QSA "put" BAIC into a better position than it had been at the time PSM took possession of it, the district court concluded that "the reinsurance agreement is better characterized as an 'improvement' than an expense necessary to protect BAIC."

Finally, PSM's policy argument also fails. The crux of PSM's argument is that, absent reversal, judgment creditors who execute on a judgment and take possession of property will face an "insurmountable dilemma," wherein they must carefully deduce which projects are "repairs and maintenance" on the property and which are "improvements." But this argument is based on a false premise that it was Defendants or the district court, not PSM, that opted to execute on the judgment while an appeal remained pending. It was this affirmative choice that put PSM in the position that it has now, with hindsight, discovered to be unenviable.

## C. The award of post-reversal attorneys' fees to Defendants under § 1717 (No. 15-55941)

### 1. Standard of Review

We "review[] de novo questions of law concerning entitlement to attorney's fees." *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1056 (9th Cir. 2013) (citation omitted). "State law governs whether a party is entitled to attorney's fees in diversity cases such as this one." *Id.* (citation omitted). However, "[w]e review [the amount of] attorney fees awarded under state law for abuse of discretion." *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214,

218–19 (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999)).

For this inquiry, because we review a diversity case, "[d]ecisions of the California Supreme Court, including reasoned dicta, are binding on us as to California law." *Id.* at 219 (citation omitted). "Decisions of the six district appellate courts are persuasive but do not bind each other or us." *Id.* (citation omitted). But "[w]e should nevertheless follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it." *Id.* (citation omitted).

PSM's appeal challenges whether the district court erred in awarding fees under California Civil Code § 1717. This is a legal challenge and is thus reviewed de novo. Defendants' appeal challenges the district court's decision to reduce their fee award by thirty percent on grounds that they achieved only limited success. Because this is a challenge to the amount of fees awarded by the district court, we review for abuse of discretion.

## 2.  Analysis

The district court's May 19, 2015 order granted in part and denied in part Defendants' motion to recover post-appeal attorneys' fees. Although the district court denied as untimely Defendants' request for fees pursuant to California Code of Civil Procedure § 685.040, it awarded fees under § 1717. Reviewing de novo, we reverse.

California Civil Code § 1717 states that:

> (a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . .

> (b)(1) The court . . . shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment.

Cal. Civ. Code § 1717(a)–(b).

In *Carnes v. Zamani*, 488 F.3d 1057 (9th Cir. 2007), we held that "[i]n California, the contractual right to attorney fees contemplated by section 1717 is extinguished upon satisfaction of the judgment." *Id.* at 1061 (citing *Berti v. Santa Barbara Beach Props.*, 145 Cal. Rptr. 3d 364, 369 (Ct. App. 2006)).

Here, the district court determined that PSM had satisfied the judgment in full prior to Defendants' request for post-reversal fees, and that this is true irrespective of which order Defendants' take as the operative "judgment." *See PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, No. CV 05-08891 MMM, 2015 WL 11652518, at *8 (C.D. Cal. May 19, 2015) ("Defendants did not file their motion for attorneys' fees and

costs under § 865.040 until December 31, 2014, several years after PSM's obligations under the mandate, i.e., return of BAIC shares and payment of attorneys' fees and costs, had been satisfied."); *id.* at * 9 ("More fundamentally, even if the fees sought by defendants could be characterized as fees incurred to enforce the December 17, 2014 judgment, § 685.040 provides no basis for awarding the fees because PSM's obligations under the December 17 judgment were fully satisfied prior to the date defendants filed their motion for attorneys' fees."). Notwithstanding these intermediate conclusions, the district court then proceeded to award Defendants attorneys' fees under § 1717, without addressing why, consistent with *Carnes*, Defendants' right to these fees was not extinguished upon PSM's satisfaction of the judgment. *Id.* at *10–14.

Because the district court erred when it awarded attorneys' fees to Defendants under § 1717, while simultaneously concluding that PSM had fully satisfied the obligations stemming from the operative judgments, we reverse.[8] Under *Carnes*, any right to attorneys' fees under § 1717 "is extinguished upon satisfaction of the judgment." 488 F.3d at 1061 (citation omitted).

---

[8] Our decision to reverse the district court's award of post-reversal fees to Defendants under § 1717 renders moot Defendants' challenge to the district court's thirty percent reduction of the lodestar amount.

## D.  The denial of costs to Defendants for court-appointed experts.  (No. 15-56184)

### 1.  Standard of Review

We review a district court's application of Federal Rule of Civil Procedure 54(d)(1) and its denial of costs for abuse of discretion.  *See Berkla*, 302 F.3d at 917.

### 2.  Analysis

Following the district court's entry of judgment on December 17, 2014, Defendants filed an application with the Clerk to tax costs.  After a hearing, the Clerk taxed deposition costs in the amount of $3,622.22 against PSM, but denied Defendants' remaining requests to tax a $455 filing fee and $150,967.91 in costs attributable to the court-appointed experts.  Defendants then filed a motion to retax costs.  On July 14, 2015, the district court denied the motion.  The district court's decision rested on Defendants' "limited success and partial recovery, the benefit to both parties of the court-appointed experts' reports, and the necessity of retaining such experts to assist in analyzing the complex issued raised by the post-appeal restitution proceedings." Because we reverse the district court's restitution award to PSM, the district court's rationale for denying Defendants' motion to retax is undermined, at least in part.  Accordingly, we vacate the district court's denial and remand for further consideration in light of today's opinion.

## III.

For the reasons set forth above:

1.  In No. 15-55026 & 15-55087, we reverse the district court's December 17, 2014, order with respect to the order's award of $1.1 million in restitution to PSM.[9]  We dismiss as moot PSM's appeal of the district court's denial of prejudgment interest.  We affirm the December 17 order in all other respects, including as to the issue of QSA rescission.

2.  In No. 15-55941, we reverse the district court's May 19, 2015, order awarding attorneys' fees to Defendants.  In No. 15-55943, Defendants' appeal of the district court's reduction of the lodestar fee amount is dismissed as moot.

3.  In No. 15-56184, because we reverse PSM's restitution award, we vacate the district court's July 14, 2015, order denying Defendants' motion to retax costs and remand for reconsideration in light of the changed circumstances.

4.  In each of these five appeals, each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, VACATED and REMANDED in part, and DISMISSED in part.**

---

[9] We recognize that, in awarding PSM a $700,000 offset, the district court also required PSM to return the account receivable to BAIC.  This $700,000 formed a part of the award to PSM that we now reverse, and so we also reverse that aspect of the district court's order that required PSM to return the receivable to BAIC.